## BREIMEYER et al., Respondents, v. STAR BOTTLING COMPANY, Appellant.

**St. Louis Court of Appeals, Argued February 4, 1909, Opinion Filed March 9, 1909.**

1. **APPELLATE PRACTICE: Judicial Notice: Terms of Court.** Appellate courts can take judicial notice of the beginning of a term of a trial court, but cannot take judicial notice of its ending. Where an abstract of the record recited that a judgment was rendered on the ·18th day of July and a motion for new trial filed on the 20th day of July in the same year, there being no recital in the record showing that the term at which the judgment was rendered continued to the latter date, the Court of Appeals will not presume that the motion for new trial was filed at the same term.

2. ————: **Bill of Exceptions: Abstract of Record.** Where an abstract of the record purported to set out the evidence but showed no caption, no filing, no indorsement and no identification of the alleged evidence with a bill of exceptions, the appellate court could not review errors assigned at the trial.

3. **PRACTICE: Misjoinder of Parties: Demurrer: Waiver.** Where a demurrer to a petition for improper joinder of parties plaintiff is overruled and the defendant answers alleging the improper joinder, he does not waive his right to raise on appeal the objection that there was such a misjoinder.

4. ————: ————: **Parties: Identity of Interests.** Several parties dealing in bottled drinks with their several brands blown in their respective bottles, could unite in an action to enjoin another company from acquiring and using their bottles by refilling the same with inferior beverages and selling them under the names given them by the several parties; it was a species of unfair competition with all the plaintiffs which was charged against the defendant for which they had a common remedy.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

AFFIRMED.

*F. A. & L. A. Wind* for appellant.

There is a misjoinder of parties plaintiff and causes of action. Pomeroy, Eq. Juris. (3 Ed.), sec. 251 1-2; High on Injunctions, sec. 65a; Lumber Co. v. Town, 20 Fed. 422; Tribette v. Railroad, 70 Miss. 182; Turner v. Mobile, 135 Ala. 73.

*Frank K. Ryan* for respondents.

(1) There is nothing before the court on this appeal except the record proper. Harding v. Bedoll, 202 Mo. 625; Land Co. v. Bretz, 125 Mo. 418. (2) Respondents are proper parties to be joined in this action. R. S. 1899, sec. 542; Perkins v. Baer, 95 Mo. App. 70; Newmeyer v. Railroad, 52 Mo. 81; Bobb v. Bobb, 76 Mo. 419; Story's Equity Pleading (10 Ed.), sec. 271; 1 Pomeroy's Equity Jur. (3 Ed.), sec. 269; Railroad v. McConnell, 82 Fed. 65; Smith v. Bank, 69 N. H. 254; Insurance Co. v. Van Cleave, 191 Ill. 410; Bitterman v. Railroad, 207 U. S. 205; Pillsbury v. Eagle, 86 Fed. 608.

REYNOLDS, P. J.—Suit in equity by Breimeyer and some ten other plaintiffs, individuals, corporations and partnerships, against the defendant to enjoin it from further taking or using plaintiffs' respective bottles and siphons. The amended petition on which the case was tried alleges, that plaintiffs place their beverages upon the market in glass bottles and siphons upon each of which their respective names are distinctly and indelibly blown; that these names have been adopted and used by plaintiffs as trade names, and are of value to plaintiffs in the sale of their goods; that it is a custom of the trade, and as such well known to defendant, that the branded bottles used by plaintiffs are not sold, but only the contents thereof, and the packages returned to the manufacturer to be by him refilled and again delivered to the dealer.

The petition further alleges that defendant repeatedly, knowingly, wilfully and continuously has gathered up and collected together the bottles and siphons of the various plaintiffs, without their consent and against their remonstrances; that it has filled the same with beverages of its own manufacture, inferior to those made by the respective plaintiffs, and has sold and delivered, and is selling and delivering some to the trade at prices less than those charged by the different plaintiffs, thereby inducing and making it possible for defendant's dealers to sell its inferior beverages in the packages of the plaintiffs to the public as and for the goods of the various plaintiffs.

The petition further alleges that defendant has taken possession of and converted to its own use many thousands of bottles and siphons belonging to the plaintiffs, and has sold large quantities of its goods therein, thereby damaging the respective plaintiffs by depriving them of the use of their property, and also injuring the reputation of the beverages of the respective plaintiffs by selling its own inferior and cheaper goods in the branded packages of plaintiffs.

The petition further alleges that because of the large number of dealers purchasing goods from defendant, and because of the extent of territory covered by plaintiffs and defendant, it would require innumerable actions at law on the part of each plaintiff to recover possession of his bottles, or damages for their wrongful taking and use, and would subject each plaintiff to great expense to conduct such lawsuits; that the injury to each plaintiff is and will continue to be irreparable, and that plaintiffs are without adequate remedy at law.

Defendant demurred to the petition on the ground that it was multifarious and improperly united parties plaintiff, who were not jointly interested, and that the petition did not state facts sufficient to constitute a cause of action.  The demurrer was overruled and

defendant answered. After a general denial, the answer avers:

"That at the time of defendant's organization, defendant acquired for a valuable consideration the established trade and good will of some fourteen bottlers of carbonated beverages, including some 100,000 bottles having the names of said bottlers blown in them; that for the purpose of advertising the fact that defendant was manufacturing the product it was selling, defendant placed on such bottles filled and sold by defendant a label containing the name of defendant; that it was then an established custom to sell beverages with case and bottles and pay a consideration for the return of the cases and bottles—and defendant says that retail dealers frequently buy from two or more manufacturers regularly and that it may happen that empty bottles of one manufacturer are placed in the case of another manufacturer and accepted by the latter in lieu of one of his own bottles.

"And defendant says that carbonated beverages are frequently sold by the retail dealers to persons who take them to picnic groves and other places away from the dealer's establishment, and become lost to the dealers as well as the manufacturer.

"That plaintiffs charge their customers for said lost bottles directly or indirectly, and by their course of business, acquiesce in the abandonment of said bottles and their interest therein.

"And defendant says that for the purpose of obtaining bottles plaintiffs have established a market price for the same and have established and maintained an agency for the purchase and sale of second-hand bottles of all kinds.

"And further answering defendant says that defendant also purchased empty second-hand bottles, regardless of the names blown in said bottles, fills such bottles with their products and for the purpose of designating the manufacturer of the beverage contained

therein and of obtaining the benefit of its reputation as the manufacturer of superior goods, defendant places upon such bottles—so filled and sold—a conspicuous label containing defendant's name and the beverage therein contained, and place such bottles in a case containing as well the name of defendant in prominent letters, all of which is well known to the plaintiffs herein.

"And further answering, defendant says that the course adopted by defendant in the use of bottles and the sale of beverages as stated last aforesaid, is almost universally adopted by bottlers of beer and carbonated beverages, and the practice of buying or having made bottles with the names of manufacturers blown in the same, is being abandoned.

"Further answering, defendant says that each of the plaintiffs has been in habit of accepting from his customers empty bottles not containing their names in lieu of bottles delivered with contents to such customers and disposing of such bottles to an association known as the Missouri Bottlers' Association and have not offered to exchange bottles with defendant, but have refused to do so; that by the aforesaid conduct of plaintiffs they have lost title to their own bottles, and have made it possible and necessary for defendant to use bottles exchanged in manner aforesaid, and that but for the said misconduct of plaintiffs, defendant would have no occasion to use any bottles bearing the brands of the plaintiffs respectively.

"Further answering, defendant says that the interest of the several plaintiffs is separate and distinct from each other—that the plaintiffs have no interest in common, and that there is a misjoinder of the plaintiffs in this action.

"And for another and further defense, defendant says that the plaintiffs have united together in the name of the 'Missouri Bottlers' Association,' for the purpose of fixing and maintaining prices for carbonated beverages in the city of St. Louis and vicinity, and pre-

venting competition in the sale of such beverages, and that by reason of such fact, the plaintiffs should not be permitted to maintain this action."

To this answer there was a general denial by way of reply and a trial being had, the court on the nineteenth of July, 1907, found the issues for plaintiffs and entered its decree enjoining the defendant, its officers, agents and servants "from taking possession of, collecting, gathering up or buying from second-hand or from junk dealers and from refilling and from selling or delivering to the trade or public any bottles or siphons," of the several plaintiffs, describing the bottles and siphons, by their marks and letterings, and adjudging the costs of the proceedings against the defendant. The abstract then proceeds as follows: "July 20, 1907, defendant filed motion for new trial as follows:" (The motion for new trial is then set out in the abstract of the record proper here verbatim.) The abstract then continues: "November 14, 1907, motion for new trial was overruled. November 29, 1907, defendant deposited $10 docket fee, filed application for appeal and was granted thirty days to file bill of exceptions and ten days to give appeal bond, and appeal was allowed to St. Louis Court of Appeals. December 9, 1907, defendant was granted five days additional to file bond. December 12, 1907, appeal bond was filed and approved. December 26, 1907, defendant was granted thirty days additional time to file bill of exceptions. January 22, 1908, defendant was granted thirty days' additional time to file bill of exceptions. February 20, 1908, defendant was granted thirty days' additional time to file bill of exceptions. March 20, 1908, defendant was granted thirty days' additional time to file bill of exceptions. March 31, 1908, defendant filed bill of exceptions which was signed and approved." The abstract then proceeds: "At the trial the following proceedings were had:" Thereupon, extending over 322 pages is

what purports to be the testimony in the case in full. At the end of this is the recital, "The above and foregoing was all the testimony offered in the case." The abstract then concludes: "And afterwards, on, to-wit, July 18, 1907, the court made and entered a finding and decree for plaintiff, perpetually enjoining defendant from using or refilling the bottles or siphons of the plaintiff having their names, initials, or trademarks therein or thereon. And on the twentieth day of July, 1907, and within four days after rendering said decree, the defendant filed its motion for a new trial, as follows: "The motion for new trial is then set out verbatim as it had previously appeared in the abstract of the record proper, after which appears this in the abstract: "Which said motion the court overruled on the fourteenth day of November, 1907, to which ruling and order of the court, the defendant then and there duly excepted at the time. And on, to-wit, November 29, 1907, defendant was granted thirty days from date to file bill of exceptions and ten days to file bond and defendant deposited $10 for docket fee and filed his affidavit for an appeal and an appeal was allowed to St. Louis Court of Appeals. And on December 9, 1907, defendant was granted five days' additional to file bond. And on December 12, 1907, defendant filed appeal bond, which was duly approved. And on December 26, 1907, defendant was granted thirty days' additional time to file bill of exceptions. And on January 22, 1908, defendant was granted thirty days' additional time to file bill of exceptions. And on February 20, 1908, defendant was granted thirty days' additional time to file bill of exceptions. And on March 20, 1908, defendant was granted ten days' additional time to file bill of exceptions. And that the foregoing matters and things, ruling and exceptions may be made a part of the record, defendant tenders this, his bill of exceptions, and prays

that the same may be signed and sealed as such, which is accordingly done, this thirty-first day of March, 1908.

"ROBERT M. FOSTER,        (Seal)

"Judge Div. No. 9, Circuit Court, St. Louis, Mo."

Appended to this a lot of exhibits are copied; then follows the index, and following the index are a lot of labels, twelve of them, apparently labels used by defendant, pasted on to the back or last pages of the compilation, without anything whatever appearing to show whose exhibits they are, or that they were included in or a part of the bill of exceptions, save that they are marked "Exhibits" and numbered, or had anything whatever to do with the case, or without anything to account for their presence in the abstract, nor do they appear to be called for in the bill of exceptions. Plaintiffs insist that there is nothing before this court except the record proper, and cite cases in support of this contention, thereby invoking the benefit of the point made. We are, therefore, bound to notice it. It will be observed that while it appears that the decree was entered on the eighteenth of July, 1907, and the motion for the new trial filed on the twentieth of July, 1907, there is not a suggestion or a word to show that the term of the court at which the decree was entered on the eighteenth of July continued until the twentieth of July. While the appellate courts can take judicial knowledge of the beginning of a term, they cannot and do not take judicial notice of its ending. [Harding v. Bedoll, 202 Mo. 625, l. c. 632.] There is no presumption, in the absence of a recital from the record to the contrary, that the court was in session two days after the eighteenth of July, so that we are not allowed to presume that the motion for a new trial was filed during the term of court at which the decree was entered. [Harding v. Bedoll, supra.] There is not a word in this abstract to show that even what is set out as the testimony and proceedings at the trial is the bill of exceptions. [Reno v.

Fitz Jarrell, 163 Mo. 411; McCord Rubber Co. v. St. Joe Water Co., 181 Mo. 678, l. c. 790.] We have stated it literally and exactly as it appears in the abstract and there is no caption, no filing, no endorsement, nothing whatever to identify the mass of what appears to be the testimony with any bill of exceptions alleged to have been filed in the case. It is true that it winds up with the statement, over the judge's signature, that "defendant tenders this, his bill of exceptions, and prays that the same may be signed and sealed as such, which is accordingly done, this thirty-first day of March, 1908. Robt. M. Foster, (Seal) Judge Div. No. 9, Circuit Court, St. Louis, Mo." But it has been held over and over by our Supreme and appellant courts that the bill of exceptions does not prove itself. [See—*passim*— Hill v. Butler County, 195 Mo. 511, l. c. 514; Bick v. Williams, 181 Mo. 526.] So that there is no identification of anything as a bill of exceptions filed in the case. Furthermore, this abstract contains no recital whatever which by any possible intimation informs us of the term of court at which this case was tried. We are exceedingly reluctant to dispose of cases on what look like naked technicalities, not leading to the prejudice of the parties, but we cannot disregard defects held by decision of the Supreme Court of this State to be fatal. When such defects are called to our attention and insisted upon, we have no option whatever in this matter. It is said by our Supreme Court, in Harding v. Bedoll, supra, at page 629, "The question of what is a proper abstract of the record is becoming so frequent of late that an excuse is furnished for this opinion, taking up in detail the delinquencies charged to this abstract. The rules of the court were established for the speedy and orderly disposition of its work. They are reasonable, and if examined by counsel, can readily be followed. The constructions of the rules have been very liberal, but should not be so liberal as to annul the rules themselves. Nor can the court give a strained con-

struction in one case and a more liberal one in another. The application of the rules, as made by the courts, is without respect to the case or the person. In some instances neglect or oversight of counsel may work a hardship upon clients, but this case can furnish no reason for the construction of the rules as should practically annul them. These rules apply to all persons, all cases and all representatives of clients, alike, and must be construed in one case just as they have been or will be in another, irrespective of the case, the parties or their counsel."

An example of the rigidity with which the rules announced by our appellate courts in construing the statutes as to the requirements of abstracts is furnished in a recent case, that of Wilbrandt v. Laclede Gaslight Co., opinion filed January 12, 1909, reported 115 S. W. 497.

All we can examine therefore in this case is the sufficiency of the amended petition and whether or not the decree in the case is supported by the averments in that petition. The only point of attack upon the petition itself which we think important is, that there is an improper joinder of parties plaintiff. Although often referred to as multifariousness, strictly speaking, this is not multifariousness. It is urged against the consideration of this objection, that by pleading over, defendant had waived this defect, as its demurrer having been overruled, it answered. We do not think this point is well taken. Multifariousness is a ground of demurrer; misjoinder of parties plaintiff when appearing on the face of the petition is; so is non-joinder. [R. S. 1899, sec. 598.] Moreover, defendant by its answer, distinctly set up misjoinder as a defense. So that whatever the general rule may be on a strict application of the rules of pleading, we are not disposed, under the pleadings in this case to hold too strictly to the application of the rule and by determining that by pleading over, after having demurred unsuccessfully,

the defendant is cut off from presenting this view of the case. Giving the defendant the benefit of having by his demurrer, which is a part of the record proper, and before us even without a bill of exceptions, as well as by its answer, made and saved the point of the misjoinder of parties plaintiff we will consider that. Our statute (R. S. 1899, sec. 542) provides that all persons having an actual interest in the subject of the action and in obtaining the relief demanded may be joined as plaintiffs, except as otherwise provided by law. While the point of misjoinder was not distinctly before the court in the case of Sylvester Coal Co. v. City of St. Louis, 130 Mo. 323, the report of the case shows that the suit was by several, three or more, different parties, to restrain the enforcement of an ordinance that affected all, but making each of them subject to a distinct and separate penalty for its violation. No question of misjoinder was raised or passed upon, but the court must have proceeded upon the theory that it was not improper in a case of that kind. In that case a demurrer had been interposed and it was open to the court to have raised the question of misjoinder itself, if it had chosen to do so.

In Perkins v. Baer, 95 Mo. App. 70, objection was made on the ground of multifariousness and misjoinder of parties defendant. The Kansas City Court of Appeals, deciding the case, holds (l. c. 77) that it is clear from the authorities that the Supreme Court of our State has adopted the rule, that where a bill in equity shows a single object and seeks to enforce one general right against all the defendants, it is not subject to the charge of multifariousness, and that this is especially so when all the defendants have no conflicting claims among themselves and where one defense is common to all. This decision fits the case at bar very well with the exception that it was a case in which the common right was in all of the defendants and against a single

plaintiff, while here the common right is in all the plaintiffs, and against a single defendant.

The very old and accepted case of Newmeyer v. Railroad, 52 Mo. 81, is a case in which the right of numerous taxpayers to unite to prevent a common injury was sustained, it being held that having a common right by virtue of their interest as taxpayers to complain of a wrong common to all of them, although different in degree as to each, was such a joint interest as entitled them to unite in one action.

In Bobb v. Bobb, 76 Mo. 419, l. c. 423, Judge SHERWOOD, referring to Story's Equity Pleadings and to Mitford's Equity Pleadings, held that where the fraud charged equally affects all the plaintiffs, they may jointly sue; that where one general right is claimed by the bill, although the parties may have separate and distinct rights, yet there is no misjoinder of parties plaintiff or defendant in such a case.

So, we assume that the right of several parties, having a distinct interest in a common injury, that is in an injury common to all, is recognized by our courts. The accepted text-writers recognize this same right. Thus, in his most clear and satisfactory treatise on Code Pleadings, particularly under the code of this State, the late Judge BLISS states the statutory rule to be, that where two or more persons are jointly entitled or have a joint legal interest in the property affected, they must, in general, join in the action. [Bliss, Code Pleading (3 Ed.), sec. 24.] Remarking that this statutory rule is derived from the equity practice, he says (section 62) that while the statutory provisions in regard to the joinder of plaintiffs are (1) permissive, and (2) imperative, that is to say, the first being that all persons having an interest in the subject of the action and in obtaining the relief demanded, may join as plaintiffs except as otherwise provided, and the second being that parties who are united in interest must be joined as plaintiffs or defendants, he observes that these

two provisions have long been familiar to equity plead-
ers, and that though drawn from equity practice, it
must not hence be inferred that they apply only to ac-
tions for equitable relief, the chief changes made by the
code consisting in applying to pleadings in all actions
rules otherwise recognized in courts of equity alone.
After quoting the provision of the statute, that all per-
sons having an interest in the subject of the action and
in obtaining the relief demanded, may be joined as
plaintiffs, except, etc., Judge BLISS, at section 73, says
that there is a distinction between the rule requiring
persons united in interest to be joined and the statutory
rule just given, as the latter does not contemplate a
joint interest nor is the union made imperative. "In the
cases where it has been sanctioned the interest is called
a common one—that is, certain persons are interested
in that concerning which the wrong has been done, and
will be all benefited by the relief which is sought; they
have a common interest, and may join in seeking the
relief. Thus the owners of distinct parcels of property
may be interested in being relieved from a nuisance;
. . . and tenants in common, though holding in sev-
eralty, may be interested in preventing a trespass. In
either case they may unite in an action, notwithstand-
ing the technical common law rule confining the union
to those having a joint interest. The rule being one
which has always been recognized in equity practice,
is well illustrated by equity cases." The learned author
in support of his view cites many cases where the rule
has been applied. He further says (sec. 76) : "All who
would unite must be interested in the subject of the
action and in the relief. It may not be possible to de-
fine with absolute precision the phrase 'subject of the
action,' which is used in different parts of the Code, but
we may say, in general, that it is the matter or thing
concerning which the action is brought; and though one
may be interested in that matter, unless he is also in-
terested in the relief which is sought by another, he is

not permitted to unite with him." He then gives by way of illustration, the case of two or three men, the owners of different mills propelled by water, interested in preventing an obstruction that would interfere with the down-flow of the water. They may unite to restrain or abate it as a nuisance, while they cannot unite in an action for damages, for, as to the injury suffered by each, there is no equity of interest.

Story, in his work on Equity Pleadings (10 Ed.), sections 120, 121 and 285, takes the same view. Thus, in section 120, he bases the right of several and different parties to join as parties plaintiff, in cases where the parties are very numerous, and he holds that, "although they have, or may have, separate and distinct interests, yet it is impracticable to bring them all before the court, and, on this account, they are dispensed with. In this class of cases, there is usually a privity of interest between the parties; but such a privity is not the foundation of the exception. On the contrary, it is sustained in some cases, where no such privity exists. However, in all of them there always exists a common interest, or a common right, which the bill seeks to establish or enforce, or a general claim or privilege, which it seeks to establish, or to narrow, or to take away." In section 121 he illustrates it by a case brought by some of the tenants of the lord of the manor, on behalf of themselves and all other tenants, against the lord, to establish some right; such, for instance, as a bill with regard to a sluice to a mill, or a right of common, or a right to cut turf. He is treating in these cases, it is true, of the right of some of the parties to bring the action when all of the parties had not united in it, and while this is not very pertinent to the question now discussed, it is applicable to a proposition made by the learned counsel for the defendant in this case, who claims that by reason of the dropping

out of some of the plaintiffs after the institution of the suit before it culminated in a decree, that therefore, the action had abated as to all. As will be noticed, Judge Story disposes of that controversy to this contention. Mr. Justice Story (section 285) given as another exception to the general doctrine against multifariousness and misjoinder, those cases in which the parties (plaintiffs or defendants) "have one common interest touching the matter of the bill, although they claim under distinct titles, and have independent interests," and citing authorities and giving illustrations in support of this, he announced practically the same doctrine as that laid down by Judge Bliss.

The prevention of a multiplicity of suits and actions, is a well-known ground of equity jurisdiction. That is one of the grounds urged and set out in the amended petition in this case, so that upon that ground also we might sustain the action. Pomeroy, in his work on Equity Jurisprudence, vol. 1 (3 Ed.), after calling attention to the fact that jurisdiction in equity, based upon the prevention of a multiplicity of suits, was always sustained, says that the jurisdiction has long been extended to other classes of cases, cases which are not, "technically, 'bills of peace,' but 'are analogous to' or 'within the principle of' such bills." He says (section 269) that, "Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is, and because there is merely a

community of interest among them in the question of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body."

Applying these principles to the case in hand and referring back to the amended petition, which we have heretofore set out, substantially, it will be noticed that here is a case of common interest in all of the plaintiffs against the defendant for an alleged wrong, committed by the defendant against all of the plaintiffs. That is to say, the charge is, substantially, that the defendant gathers together the bottles and siphons of these different several plaintiffs indiscriminatingly, and, using them as its own, refills them with its product and puts this product upon the market at a lower price than it is possible for the plaintiffs to do by reason of the fact that the defendant, as is alleged, is able to buy up these bottles or get possession of them at a very low figure. Unfair competition with all the plaintiffs is charged, a competition levelled at all of them in an unfair manner, by using the several plaintiffs' containers in selling to the public goods not the manufacture of plaintiffs, and of inferior quality. Assuming that the demurrer is to be considered as offered, or disregarding that and treating the attack upon the amended petition here made on the same grounds as those in the demurrer, all the allegations of the pleader set out in his amended petition must be taken as true, in as far as they are well pleaded. This amended petition, therefore, sets out a common interest of each of the plaintiffs in the prevention of the same wrong by the defendant against each and all the plaintiffs. In effect, it sets out a case of an injury by the defendant against each and all of the plaintiffs indiscriminately, and the relief sought is common to all of these plaintiffs, that relief is, to prevent this defendant from carrying on this business on its part in this manner and

by these instruments of trade. On principle, as announced by the authorities which we have cited above, there is no misjoinder, and the case presented a wrong, the redress of which is peculiarly with the power of a court of equity. The decree in the case is no broader than the allegations of the amended petition. As we have said, in the state of the case as presented in the abstract, we must refuse to go into an examination of the evidence. Decree affirmed. All concur.