St. Paul and Kansas City Short Line Railroad Co. et al., Respondents, v. United States Fidelity and Guaranty Co., Appellant.—105 S. W. (2d) 14.

Kansas City Court of Appeals.   March 1, 1937.

*McVey, Randolph, Smithson & Garrity* for respondents.

*Hook & Thomas, Ingraham D. Hook* and *Harry L. Thomas* for appellant.

REYNOLDS, J.—This suit originated in the Circuit Court of Jackson County; and it is one in equity by the plaintiffs, St. Paul

and Kansas City Short Line Railroad Company (hereinafter called Short Line); Chicago, Rock Island, and Pacific Railway Company (hereinafter called Rock Island), and Clinch-Mitchell Construction Company (hereinafter called Clinch-Mitchell), against the defendant, United States Fidelity & Guaranty Company (hereinafter called the guaranty company), upon a public liability policy issued by it to one of the plaintiffs (Clinch-Mitchell) providing indemnity resulting from liability imposed by law.

The amended petition upon which the cause was tried below is in two counts, the first of which seeks a reformation of the policy and of a certain endorsement thereon, which policy originally named Clinch-Mitchell as the assured thereunder and which endorsement included the Rock Island as an additional assured, so as to include the plaintiff Short Line as an additional assured in said policy as well as the Rock Island and to show the location of the work covered to be on the line of the Short Line instead of on the line of the Rock Island at Trenton, Missouri. The second count seeks recovery in the name of all three plaintiffs on the policy as reformed, covering a loss sustained through the death of one Katherine Henkins.

From a judgment for the plaintiffs upon the first count for the reformation of the policy in the particulars sought and upon the second count for the sum of $3532.50 and costs, the defendant appeals.

The plaintiffs Rock Island and Short Line are railroad corporations, organized under the laws of the State of Iowa; and each is duly authorized to do business in the State of Missouri. The plaintiff Clinch-Mitchell is a railroad construction company, incorporated under the laws of the State of Illinois and duly authorized to do business in the State of Missouri. The defendant guaranty company is an insurance corporation, organized under the laws of the State of Maryland and duly authorized to do an insurance business in the State of Missouri. The Short Line is a subsidiary of the Rock Island; and the stock therein is held by the Rock Island; and it is financed, managed, and operated by the Rock Island. It is a nonoperating company, and its lines of railroad are taken over by the Rock Island under a long time lease.

It appears from the record that, about June 14, 1929, the Short Line entered into a construction contract with Clinch-Mitchell, covering the construction and grading of the road bed on a new line of railway in the State of Missouri between Birmingham and Coburn in said State; that, later, on November 11, 1929, it entered into an additional contract with Clinch-Mitchell for additional railroad construction of like nature from a point near Nettleton, Missouri, to a point near Polo, Missouri, approximately eighteen and one-half miles in length; that such contract further required that Clinch-Mitchell should defend all suits growing out of the work and should

indemnify the railroad against loss arising out of any claims growing out of the work and should furnish at its own expense public liability and workmens' compensation insurance fully protecting the railroad against all liability. Clinch-Mitchell sublet part of the work covering the place of the accident hereinafter mentioned to a subcontractor, E. W. Kolterman.

From the record, the following facts appear:

Clinch-Mitchell, after entering into such contract, made application to the defendant for a public liability policy covering the work to be done under its contract with the Short Line and furnished to the defendant a copy of its contract with the Short Line with the information that the construction contract was with the Short Line and that the endorsements on the policy to be issued should cover the Short Line and the Rock Island as additional assureds. The defendant issued its policy to Clinch-Mitchell but erroneously located the work to be done as on the line of the Rock Island at Trenton, Missouri, instead of on the line of the Short Line at Trenton, Missouri. The policy as issued named Clinch-Mitchell as the assured but omitted the Rock Island and the Short Line as additional assureds. Subsequently, upon the payment of an additional premium therefor, the following endorsement naming the Rock Island as an additional assured was attached to the policy:

"—— said policy is extended to cover the Chicago, Rock Island and Pacific Railway Company, as an additional Assured during the period occasioned by work being performed by the Clinch-Mitchell Construction Company for the Chicago, Rock Island and Pacific Railway Company as located and described in Item No. 4 of the policy ——"

The policy was sent to the railroad company, but it returned it to Clinch-Mitchell in a letter of November 22, 1929, asking that it furnish copies of the workmens' compensation and the public liability insurance policies, together with endorsements naming the Short Line and the Rock Island as additional assureds.

Thereupon, Clinch-Mitchell, under the date of November 23, 1929, wrote the guaranty company asking that it furnish as soon as possible a copy of the policies with endorsements naming the Short Line and the Rock Island as additional assureds.

On December 23, 1929, a copy of the letter of the railroad company to Clinch-Mitchell was also sent to the defendant. In answer, the defendant, on December 30, 1929, made out an endorsement and sent it to Clinch-Mitchell, which endorsement again located the work on the line of the Rock Island instead of the Short Line and omitted the Short Line as an additional assured.

It is contended by the plaintiffs that the omission of the Short Line from both the policy and the endorsement as an additional as-

sured was the result of an oversight and a mistake on the part of the defendant's scrivener, as was also the erroneous location of the work to be done on the line of the Rock Island instead of the line of the Short Line inasmuch as it was intended that the Short Line be included as an assured and that the location of the work should be described as on the line of the Short Line.

The prayer of the first count of the petition is that the endorsement and the policy be reformed to recite that the work was for the Short Line instead of the Rock Island and that the name of the Short Line be inserted in the policy as an additional assured.

Subcontractor E. W. Kolterman was required by his contract with Clinch-Mitchell to carry public liability insurance. He took out a policy in the Southern Surety Company (which, at the time of the filing of the suit herein, had become insolvent) and deposited it with Clinch-Mitchell.

The policy so issued by the defendant and sued on herein recites, among other agreements, that the defendant agrees to settle and/or defend all claims resulting from liability imposed upon the assured by law for damages on account of bodily injuries including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons other than employees of the assured; to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, for damages on account of bodily injury including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons other than employees of the assured; and to pay all expenses covering costs and expenses of the investigation, negotiations, or defense and all interest, not in excess of the sum of $10,000 for any one accident. Said policy further provided that it would cover all claims for bodily injuries including death at any time resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons other than employees of the assured, by reason of and during the prosecution of the business described in and conducted at the location named in statement No. 4 of the schedule, within the policy period (namely, from July 8, 1930, to July 8, 1931).

On August 2, 1930, one Katherine Henkins was killed in an accident on the public highway from outside the right of way of the line under construction, near a point where work had been or was being done by subcontractor Kolterman. Upon investigation, Clinch-Mitchell reached the conclusion that the accident was not connected with its work, but that it was a highway accident; and it made no report thereof. Later, on July 21, 1931, a suit against the Short Line was filed in the Circuit Court of Livingston County, Missouri, in behalf of the children of the deceased Katherine Henkins, through their next friend. Clinch-Mitchell had no notice of this suit until

February 19, 1932, when it was advised of said suit by letter from the Short Line through its chief engineer, who also enclosed a letter to its attorneys. Later, on February 25, 1932, the Rock Island forwarded to Clinch-Mitchell a copy of the petition, together with notice making formal demand that Clinch-Mitchell undertake the defense of the case. These papers were forwarded to the Kansas City counsel for Clinch-Mitchell on February 29, 1932; and, on March 1, 1932, notice was given to the defendant of said suit, together with a copy of the petition and a demand that the defendant undertake the defense of the case. In reply, under date of March 10, 1932, the defendant denied liability and declined to participate in the defense of the suit.

An amended petition was filed by the Henkins children. The case was removed to the United States District Court, where later a judgment in the sum of $2500 was rendered on a compromise. Court costs and other expenses in defending the suit (which was handled by the attorneys for Clinch-Mitchell) increased the total sum to $3000, which was paid by the Rock Island and by it charged to the account of the Short Line and by the Short Line in turn charged to the account of Clinch-Mitchell, against a fund being withheld from Clinch-Mitchell by the Short Line until its contract was completed. These payments and charges were made in the usual course of dealing between the three corporations. The ultimate charge was against Clinch-Mitchell.

On February 29, 1932, Clinch-Mitchell, through its attorneys, made demand upon subcontractor Kolterman that he, under his contract, defend the suit.

The reasons assigned by the defendant for declining to participate in the defense of the suit were that the Short Line was not an assured and that the policy provisions had been violated because neither the accident nor the suit had been reported as therein required and because the liability of Clinch-Mitchell, if any, to the Rock Island and the Short Line was by reason of contract, a matter expressly excluded by the policy provisions. It further stated that such grounds were not the only grounds for its refusal to undertake the defense. The defendant thereafter took no part in the defense of the action; and it was settled, as above stated, on December 13, 1932.

In the instant case, the amended petition alleges the corporate identities of the various parties, describes the project under construction, and refers to the contract between the several parties plaintiff and to the policy issued by the defendant to Clinch-Mitchell and the endorsement under date of July 8, 1930, extending the coverage to the Rock Island. It alleges that the name of the Short Line was omitted from the endorsement through mistake and that

the defendant had knowledge of the contract between the two railroads and knew of the intention of the railroads that the Short Line be included in the policy as an assured; describes the accident; recites the filing of the petition by the Henkins children and the subsequent proceedings in their suit and the settlement and the final judgment and its discharge by payment by the Rock Island and the payment of other expenses in connection with the accident; and prays that the policy be reformed to include the name of the Short Line and the territory on which the accident occurred. The second count of the petition recites that the Short Line was compelled to defend; that judgment was rendered against it on the Henkins claim in the sum of $2500 and costs; that such judgment was paid by the Rock Island and charged to the Short Line, for which it had accounted; and that plaintiffs have duly complied with all of the terms of the policy. Judgment for $3000 and interest, on the policy as reformed, was prayed.

To this petition, the defendant filed a demurrer, which was overruled, and later answered by admitting the execution of the policy and denying all other allegations of the first count.

To the second count, the defendant in its answer pleads a breach of the provisions of the policy by reason of the plaintiffs' failure to report the accident and forward the summons as required by said policy and report knowledge of the accident and transmit any information as to the accident and their delay in transmitting notice of the suit.

The answer further sets up that no action had ever been brought against Clinch-Mitchell or subcontractor Kolterman (who had insurance in the company which had ceased to exist) and that the liability of Clinch-Mitchell to the Short Line arose solely from contract.

It sets up the following provisions of the policy:

"Condition F. Upon the occurrence of an accident the Assured shall give, as soon as reasonably possible, notice thereof with the fullest information obtainable to the Company at its Home Office or to a duly authorized agent of the Company. If a claim is made on account of such accident the Assured shall give like notice thereof with fullest particulars. If thereafter a suit is brought against the Assured to enforce such a claim the Assured shall, as soon as reasonably possible, forward to the Company at its Home Office every summons or other process as soon as same shall be served on him."

"Exclusions. The Foregoing Agreements are Subject to the Following Conditions: Condition A. This policy does not cover loss from liability for, or any suit based on injury and/or death; ——— (5) Liability of others assumed by the Assured under any contract or agreement oral or written."

It charges that the plaintiffs Rock Island and Short Line are not real parties in interest, having been fully reimbursed; that plaintiff Clinch-Mitchell is not a real party in interest, having paid only under contract; and that the delays in giving notice of the accident, claim, and suit have prejudiced the defendant.

The trial court found that the policy sued on had been originally issued to Clinch-Mitchell as the assured therein and that later, upon the request of Clinch-Mitchell, the defendant had added by endorsement to said policy an extension to include the Rock Island as an additional assured, intending thereby to cover also the Short Line. In its decree, it found the issues for the plaintiffs and decreed reformation by changing the location as prayed and by inserting the name of the Short Line as an additional assured. It also found the issues for the plaintiffs under the second count of the petition and awarded judgment to the plaintiffs against the defendant for the sum of $3000 with interest from December 13, 1932, and for costs.

The defendant requested some twenty-seven findings of fact and some nine declarations of law to be granted by the trial court—some of which were given, some of which were modified and given, some of which were refused.

## OPINION.

Upon this appeal, the first error assigned by the defendant is as follows:

"1. The court erred in ruling defendant's demurrer to the amended petition for the reason that the petition upon its face and the policy thereto attached and made a part thereof failed to state any cause of action against the defendant and in favor of either the Rock Island, the Short Line or Clinch-Mitchell, and because said petition upon its face showed that the claims, if any, of the Rock Island and of Clinch-Mitchell resulted solely from and by reason of matters of contract specifically excluded from the coverage of the policy."

The other errors assigned relate to the refusal of the court to give its requested declarations of law Nos. 9, 4, 6, 7, 8, 1, and 2 and to the failure of the court to give its requested findings of fact Nos. 24, 22, 26, 23, 21, 15, 17, 18, and 4. Its final assignment of error is to the effect that the court erred in rendering judgment against the defendant and for each and all of the plaintiffs.

1. The first point made by the defendant is to the effect that the trial court wrongfully ruled its demurrer.

We will first consider defendant's point No. 2, relating to the decree reforming the policy in the particulars prayed under the first count of the petition.

This decree appears to have been fully justified by the evidence in the record.

The work covered by the policy was on the line of the Short Line, and the construction contract of Clinch-Mitchell for the doing of the work and for the construction of the proposed line upon which it was to be done was with the Short Line as employer. The defendant had all of such facts before it when it issued the policy in question to Clinch-Mitchell.

That the intent of the parties to the construction contract was to insure Clinch-Mitchell and the employing railroad (the Short Line) and its parent company (the Rock Island) against any and all liability for injury or accident to the public arising out of the doing of the work under such contract fully appears. The defendant was advised that the policy to be issued by it was to further such intent.

Clinch-Mitchell, under the construction contract, agreed to furnish such liability insurance at its own expense. When it applied to the defendant for its policy, it furnished the defendant with a copy of the contract and at the same time made it clear that the policy to be issued should not only name Clinch-Mitchell as the assured but should include the Short Line and the Rock Island as additional assureds. The failure of the defendant so to issue its policy (so far as shown by the record) is to be accounted for only as the result of an oversight or mistake on the part of the defendant in making up the policy and the endorsements afterward appearing thereon. There is nothing in the record which tends to show that it could have resulted in any other manner. In the record, there is no explanation or attempted explanation by the defendant to the contrary. The fact that the policy was delivered to and kept by either the Short Line or the Rock Island is immaterial in view of the record which shows that it made repeated efforts thereafter to have such mistake fully corrected by endorsement, as shown by correspondence in the record.

It must be held that, under the evidence, the reformation of the contract of insurance in the particulars noted, by adding the Short Line as an additional assured and correcting the location of the work to be covered by making such location read on the line of the Short Line instead of on the line of the Rock Island, was properly decreed.

2. The defendant makes a point to the effect that the trial court wrongfully ruled its demurrer and insists that all direct actions for tort against Clinch-Mitchell and the Rock Island became barred by statute on August 3, 1931, and that they are therefore not parties having any interest in this action or in the result thereof and that, by reason thereof, there is a misjoinder or defect of parties plaintiff for which its demurrer should have been sustained.

In its assignment of error No. 1, on the action of the trial court in overruling its demurrer, it fails to charge in express terms a

defect of parties as one of the grounds of the alleged error. Not only so, but, in the statement of its points and authorities it fails to singularize a misjoinder or defect of parties as one of the grounds on which its demurrer should have been sustained. Both its assignment of error and its points and authorities are general and such as go only to a general demurrer and not to a specific. We are not meaning to hold, however, that misjoinder or defect of parties cannot be reached by general demurrer. We do hold that, where notwithstanding such demurrer the defendant answers over either before or after it is disposed of by the court, it is waived. Such is also the rule where the demurrer is specific. The general rule of procedure in this State as to a misjoinder or defect of parties is that, where a misjoinder or defect appears on the face of the petition, the defendant must specifically demur thereto. [Sections 770 and 771, Revised Statutes 1929; Johnson v. United Rys. Co. of St. Louis, 247 Mo. 326, 152 S. W. 362.]

Where such defect does not appear on the face of the petition, the objection that there is a defect is a matter of defense which must be set up in the answer. [Section 774, Revised Statutes 1929.]

Where no such objection is made by either demurrer or answer, it will be deemed that such misjoinder or defect is waived. [Section 774, Revised Statutes 1929, *supra.*]

It is also held that, where objection is made by demurrer, such is waived by the defendant where he answers over. [Barnard v. Keathley, 230 Mo. 209, 130 S. W. 306; State ex rel. Westhues v. Sullivan, 283 Mo. 546, l. c. 572, 224 S. W. 327; Flint v. Sebastian, 317 Mo. 1344, 300 S. W. 798.]

Moreover, it must be borne in mind that this is a suit in equity and that the rule in reference to such suits is that every person having any material interest, legal or beneficial, in the subject-matter is properly made a party. [Breimeyer v. Star Bottling Co., 136 Mo. App. 84, 117 S. W. 119.]

It is provided by Section 700, Revised Statutes of 1929: "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article."

In this case, the three plaintiffs are named as assureds in the policy as reformed. It was necessary therefore that they be joined as parties in any action to reform the policy. It may be further observed that the Rock Island issued its check in discharge of the Henkins judgment on account of the liability to indemnify for which this suit is prosecuted against the defendant and charged the amount against funds in its hands belonging to the Short Line. It was paymaster and used Short Line funds in its hands in making such discharge. The Short Line, in turn, charged the amount against

a credit in its hands due Clinch-Mitchell. All three plaintiffs are interested, and their joinder is necessary to make the one satisfaction required upon recovery. Each of the two railroads has legal, if not beneficial, interest; and Clinch-Mitchell has both.

There are no exceptions in the statute which militate against the three plaintiffs, each being a party in interest, joining as plaintiffs in this suit. [McLain v. Atlas Assurance Co. Limited, of London, England (Mo. App.), 67 S. W. (2d) 849.]

3. In further consideration of the defendant's claim of error in the refusal of its demurrer, it must be remembered that this is an action by the plaintiffs against the defendant, based upon the agreement by the defendant in the policy sued upon to indemnify them against the liability imposed upon them or any of them as a result of a judgment in a direct proceeding against one of them (the Short Line) for a tort, by which judgment the other plaintiffs are bound and by which the liability of each to respond in contribution to the Short Line on account of the negligence of each is established. The policy sued on was—in the light of the facts in the record shown to have been known to the defendant, particularly its knowledge of the construction contract and the purpose for which the policy was taken—intended to cover any loss from public liability sustained by any or all of the three assureds with the ultimate liability resting upon Clinch-Mitchell, no matter who was sued. In the construction contract, Clinch-Mitchell agreed to indemnify the Short Line from any claim, suit, or judgment arising out of the doing of the work; and, in addition thereto, it agreed to furnish liability insurance, not only for itself but for the other plaintiffs. The policy in question was taken out by Clinch-Mitchell, the contractor, who also paid the premium for the Rock Island and the Short Line, the other assureds. While only the Short Line was sued in the Henkins case by the Henkins children, either of the others named could have been sued; and, by circuity of action, the liability of either of the other named assureds to respond in contribution to the one sued could have been established. The Short Line was sued, not because it was doing the work covering the place of the injury in the Henkins case, but because its railroad passed over a public highway, in grading which highway a condition was brought about thereon which gave rise to the accident resulting in the death of Mrs. Henkins, for which condition Clinch-Mitchell was responsible as the maker thereof.

4. The petition in the Henkins Case pleads, as against the Short Line, constructive negligence, which is a nondelegable duty.

In Carson v. Blodgett Construction Company, 189 Mo. App. 120, l. c. 126 and 127, 174 S. W. 447, it is held that, where the doing of the work necessarily causes danger which must be guarded against, the employer must see to it that such danger is guarded against and

cannot relieve itself by casting this duty on an independent contractor and that " 'Where the work contracted for necessarily constitutes an obstruction or defect in the street, of such a nature as to render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor), where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party.' "

In this case, a reading of the Henkins petition shows that it was based on the doing of work by the contractor which rendered the public highway unsafe and that the defendant in the Henkins Case (the Short Line) failed to protect and guard the highway; and, such being shown to be true, the Short Line could not exonerate itself by the defense that the work was done by an independent contractor. Neither could Clinch-Mitchell (who sublet the work at the place of injury to one Kolterman) exonerate itself upon the theory that it had let the work to an independent contractor.

The case stated in the Henkins petition against the Short Line furnished a serious question of responsibility; and, the defendant guaranty company having refused to defend that suit, the defendant therein (the Short Line) had the right to make the best settlement it could. [Rieger v. London Guarantee & Accident Co. of London, England, 202 Mo. App. 184, 215 S. W. 920.]

The judgment in the Henkins Case established the liability of the Short Line as one of the assureds and also established the negligence of the other plaintiffs, for which they as well as the Short Line were liable. Such liability so established by such judgment is a liability imposed by law.

The accident upon which the Henkins judgment was based occurred August 2, 1930. The petition in that case was filed July 21, 1931, so that, as the other plaintiffs were liable to respond to the Short Line in contribution for the judgment entered in said case, then it was immaterial that they were not sued therein jointly with the Short Line and it does not become necessary now to determine whether or not any action for a direct tort against them in the Henkins Case had become barred under the statute at the time that the suit herein was filed. Their liability herein under consideration was determined by the judgment in the Henkins Case, which judgment was, as we have seen, based on a cause of action instituted within the bar of the statute, against which liability under such judgment the Statute of Limitations had not run at the time of the institution of this suit. The defendant urges that the Henkins judgment was paid by the Rock Island out of the funds belonging to the Short Line and the amount thereof charged by it against the Short Line and that, in turn, the Short Line charged the amount against the

amount on its books due to the credit of Clinch-Mitchell; that neither of said railroad companies sustained any loss but that the entire loss rested on Clinch-Mitchell as a result of its contract with the Short Line to indemnify it; and that, therefore, neither the Short Line nor the Rock Island has any interest herein. Such contention overlooks the fact that either or both, by circuity of action, may be required by Clinch-Mitchell to account and that both are interested in having such claim, on the part of Clinch-Mitchell, quieted. The defendant contends that the loss due Clinch-Mitchell on account of the Henkins judgment was through liability therefor created by contract and not as a result of liability imposed by law. In such contention, however, it overlooks the fact that the Henkins judgment was a liability imposed by law within the purview of the policy sued on and the further fact that the right of indemnity in either the Short Line or the Rock Island was not dependent on contract but existed independent thereof. The fact that the Short Line was sued rather than Clinch-Mitchell is immaterial so long as the foundation of the claim was within the purview of the insurance policy.

To interpret the situation as the defendant seeks to have it interpreted is to render the contract of insurance utterly useless to the assureds and would be nothing short, practically speaking, of collecting a premium without rendering a consideration. [James v. U. S. Casualty Co., 113 Mo. App. 622, 88 S. W. 125.]

In the contemplation of the parties, the policy issued was meant to indemnify not only against direct actions for tort by injured persons, but also to cover loss which the assured might suffer by reason of being liable over to others who have been compelled to pay damages to persons injured because of the negligent or wrongful act of co-assureds or their agents. The rule is well stated by Couch in volume 5 of Cyclopedia of Insurance Law, section 1165b, pp. 4136 and 4137, as follows:

". . . public liability policies ordinarily are not confined to, and do not contemplate, indemnity only against direct actions by injured persons against the insured; rather, they cover losses which he may suffer by reason of being liable over to another who has been compelled to pay for damages to persons injured because of the negligence or wrongful act of the insured, or his agents, which resulted in such injuries being inflicted. In other words, the insured may sustain a loss from liability to the public on account of personal injuries caused by them, or their workmen, and such loss be brought within the terms of the policy by circuity of action, and the case be as plainly within the policy terms as though the injured person's suit had been brought against them in the first instance."

Three cases support the text—viz., Keller v. United States Fidelity & Guaranty Co. (N. D.), 209 N. W. 990; Kibler v. Maryland Casualty

Company, 74 Wash. 159, 132 Pac. 878; Creem v. Fidelity & Casualty Company of New York, 126 N. Y. S. 555.

In the Keller Case, *supra,* a contractor was performing work for the city of Fargo; and, in connection therewith, a third party, sustained injuries and sued the city and recovered a judgment, which was paid by the city. The city of Fargo had on hand money due the contractor and charged the amount of its loss to the contractor. Whereupon, the contractor brought suit against the city; and the city counterclaimed for the amount of the judgment paid by it. The insurer was duly notified of this suit by the contractor but refused to defend against the counterclaim. The insurer and the policy are the same in the Keller Case as in the instant case, and the basic facts are practically identical. The opinion therein reads (l. c. 992 of 209 N. W.) :

". . . The city, of course, was under the duty to keep its streets reasonably safe. It was not relieved from that duty by reason of the fact that Keller also was responsible for any dangerous or unsafe condition that might exist. If such a condition were created through Keller's negligence, and the city had notice thereof, both Keller and the city were responsible for any injuries that might result. If, in such case, the city were required to respond in damages, then, under the rule as established in this State, the city, if not an active wrongdoer itself, might compel Keller to answer over to it for such damages. Now this was exactly what the city claimed and what it sued to require Keller to do. It was this suit which Keller demanded that the defendant defend under the terms of its policy. The defendant refused to defend and Keller was compelled to incur the charges which he now seeks to recover. . . .

". . . It is unreasonable to say that Keller is deprived of the protection intended to be given under the contract because Porter sued the city instead of Keller, and the city, predicating its case on the recovery by Porter, sought to recover over against Keller. Surely the fact that the city was the plaintiff rather than Porter can make no difference if the foundation of the claim sued upon was within the purview of the policy of insurance. To so hold would defeat the plain purpose of the policy."

In the Kibler Case, *supra,* there was a like situation, both as to the insurance and the indirect liability of the contractor. In other words, the question involved was whether the policy covered a judgment for personal injuries rendered against the city, in a suit to which the contractor was not a party. The court held the judgment to be within the policy terms, saying (l. c. 162 and 163 of 74 Wash.) :

". . . The complaint upon which the judgment was obtained in Bourland against the city bases the right of action against the city on its negligence in keeping the trenches in its streets unguarded,

and in failing to give warning of this unguarded condition to passers-by. The judgment in that action established that the injury was suffered because of negligence in failing to properly guard the open trenches; and, inasmuch as the duty to properly guard the open trenches rested upon respondents, a judgment based upon the failure and neglect to do so established the negligence of respondents. The respondents were liable because they committed the original wrong which caused the injury. The city was liable because it failed to discharge its duty of keeping its streets in proper condition for public travel and preventing injury to others from the wrong of respondents. This brought the case within the terms of the indemnity policy, and the respondents, having paid the judgment establishing their liability, may recover under the terms of the policy from the appellant the amount of the judgment and costs. . . ."

"It matters not that respondents were not mentioned as defendants in the second amended complaint upon which the Bourland judgment was based. The negligence which established that judgment was their act, and the issue was tendered by the pleadings. Respondents, although not parties to that action, were directly interested in the result of that litigation and actively defended that case. They were, in substance, parties to it and bound by it."

In Creem v. Fidelity & Casualty Company of New York, *supra*, a railroad company employed a bridge company to build foundations for the pillars of an elevated railroad; and the contractor, in turn, sublet the work. The injured parties sued the bridge company, and the bridge company recovered against the contractor. The court said (l. c. 558 of 126 N. Y. S.):

". . . on the principle that one who has been held legally liable for damages, which another ought to pay, is entitled to indemnity from the latter. The right to indemnity in such case exists independently of contract. . . . By circuity of action, then, these plaintiffs have sustained a loss from liability to the public on account of personal injuries, caused by them or their workmen, and the case is as plainly within the terms of the policy as though the Johnson suits had been brought in the first instance against them."

5. The rule in Missouri is the same as expressed in the Keller Case in North Dakota. Inasmuch as the Short Line was not in *pari delicto* with Clinch-Mitchell and inasmuch as the Short Line was liable to the Henkins children only because it failed to discharge its duty of keeping the public highway in proper condition for public travel (a nondelegable duty), the Short Line has the right to recover its losses in this connection from Clinch-Mitchell.

So runs the law in this State. [City of Independence v. Missouri Pacific Railway Company, 86 Mo. App. 585; Bray v. Culp, 204 Mo. App. 636, 219 S. W. 129; City of Memphis v. Miller, 78 Mo. 67.]

It is also of interest to consider the rule expressed in Hoskins v. Hotel Randolph Company, 203 Iowa, 1152, covering the rendition of judgment against one who is not a formal party to the suit but who has assumed the defense. In other words, Clinch-Mitchell was liable over to the Short Line, not only under the rule indemnifying a party chargeable with constructive negligence only; but, through the assumption of the defense, it became, in fact, a party to the suit and liable thereunder, even though not formally named. [Brown v. Wabash Railway Co. (Mo. App.), 281 S. W. 64.]

6. The defendant further contends that there was such a breach of the provisions of the policy by the plaintiffs in their delay in giving the defendant notice of the Henkins accident, by which it was prejudiced, as to preclude any recovery by the plaintiffs herein. It bases such contention on provisions which, in effect, require of the assureds therein (1) that, upon the occurrence of an accident, they give as soon as reasonably possible notice of such accident with the fullest information obtainable; (2) that, where claim is made on account of such accident, they give like notice with the fullest particulars; and (3) that, where a suit is brought against the assureds or one or more of them to enforce such a claim, they forward as soon as possible to the insurer every summons or process as soon as served. It contends that such provisions as to notice are in the nature of conditions precedent and that a strict compliance by the plaintiffs with such provisions is necessary to a recovery in a suit on such policy against the defendant based on its claimed liability. It contends that the plaintiffs knew of or had investigated the accident within a few days after it occurred on August 2, 1930; that the plaintiffs, on such investigation, decided there was no liability and failed to notify it of the happening so as to put it in a position to take charge of the case and employ its own skill and judgment in lawful efforts to defeat or minimize the loss on account thereof; that the plaintiffs failed to take statements from witnesses, to secure addresses of witnesses, and to preserve any evidence relating to such accident and made no attempt whatever to notify it; that they elected to pass for themselves on the question of liability; that they permitted E. W. Kolterman (subcontractor on the project where the accident occurred) to complete his work in October or November, 1930, and paid him off and that he and his employees scattered without leaving any trace of where they might be found; and that the Henkins suit was filed against the Short Line on July 21, 1931, and no notice thereof was given to the defendant until March 1, 1932. However, it does not appear that the policy in suit contains any clause for forfeiture by reason of the breach of any of the provisions thereof relied on by the defendant or on account of the failure of the plaintiffs to give notice. It has been held that, where the defendant itself fails to provide in the policy for forfeiture on account of failure to

give notice as required, the court is not justified in reading such forfeiture into the policy. [Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 75 S. W. 1102; Malo v. Niagara Fire Ins. Co. of New York (Mo. App.), 282 S. W. 78; Everett v. Patrons' & Farmers' Mut. Fire Ins. Co., 222 Mo. App. 1010, 7 S. W. (2d) 463; Walker, to Use of Foristel v. American Automobile Ins. Co., 229 Mo. App. 1202, 70 S. W. (2d) 82.] To the same effect are the cases of Baker v. Fox (Mo. App.), 70 S. W. (2d) 72; Ash Grove Lime & Portland Cement Co. v. Southern Surety Co., 225 Mo. App. 712, 39 S. W. (2d) 434; Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S. W. (2d) 705; George v. Aetna Casualty & Surety Co. (Neb.), 238 N. W. 36.

Moreover, it has been held that the assured is not required under any reasonable rule of construction to give the insurer notice until such time as, from the facts of the injury and its progress, it begins to appear to a person of reasonable care and prudence that a possible liability of the assured to answer in damages might exist. [National Paper Box Co. v. Aetna Life Ins. Co., 170 Mo. App. 361, 1. c. 367, 156 S. W. 740.]

In Couch's Cyclopedia of Insurance Law, vol. 7, p. 5474, it is said that the time within which notice of an accident must be given does not begin to run until such time as the assured has reason to believe that the injury received will constitute a claim under his policy. Such statement of the text is supported by Blashfield's Encyclopedia of Automobile Law, vol. 6, p. 390; Chapin v. Ocean Accident & Guarantee Corp., 96 Neb. 213; Farrell v. Nebraska Indemnity Co., 235 N. W. 612.

The accident was investigated by both Clinch-Mitchell and the railway company soon after it occurred; but, from all information that either could secure, no ground was found to exist for the basing of liability therefor on either of them. They, therefore, made no report to the defendant of such accident. Neither of them heard anything thereafter of the matter until suit was filed by the Henkins heirs on July 21, 1931, just before the statutory year expired.

It may be said that the Short Line should have notified Clinch-Mitchell immediately upon the filing of the suit. However, it waited until February 19, 1932, before giving such notice to Clinch-Mitchell. The defendant Clinch-Mitchell, immediately upon receipt of such notice, notified the guaranty company and furnished it with a copy of the petition. Clearly, Clinch-Mitchell was not at fault. It gave notice to the guaranty company as soon as it had knowledge of the claim. It does not appear that its original investigation was made otherwise than in good faith or that its conclusion that the accident happened on the highway and had no relation to its work was reached otherwise than in good faith. The record does not show that Clinch-Mitchell had any reason to believe that the injury constituted a

claim. Clinch-Mitchell was the party primarily liable, and it was not required to give notice until it learned or had reason to believe that a claim would be made. Clinch-Mitchell could not be affected by the failure of its employer or of the Rock Island, who was behind its employer, to give such notice.

Moreover, there was no proof of actual prejudice. Prejudice is not to be presumed from mere delay in giving notice. The prejudice must be actual and must be shown to be actual.

In Walker, to Use of Foristel v. American Automobile Insurance Company, *supra*, 70 S. W. (2d), l. c. 88, where this matter was under consideration, it is said: ". . . it is not shown or claimed in this case that the insurer suffered any loss or injury by reason of not having received an earlier notice of the accident. The insurer had notice of the accident and of the pendency of the suit in ample time to appear and defend the suit. So far as the record discloses, all of the witnesses were available at the trial of the suit, and, on the whole, no damage whatever is shown to have resulted to the insurer by reason of the delay in giving notice of the accident." [Cowell v. Employers' Indemnity Co., *supra*, 326 Mo. 1103, l. c. 1114 and 1115, is to the same effect.]

And, so in this case, the defendant had ample notice, at least ample to attempt to defend the suit. It refused to do so. It made no attempt to get ready for trial and to defend the suit. Upon its own evidence, through that of witness Hundley, it appears that Hundley came to Kansas City on June 1, 1934, as its representative. It appears that he made no request of any of the plaintiffs for any information as to the nature of the accident and the evidence in connection therewith; that he made no investigation whatever to determine the liability of the defendant; and that, between March 1, 1932, and the date of the judgment, December 13, 1932, (nine months), the defendant made no effort to ascertain the facts in connection with the accident although it knew that it could have ascertained such facts from the plaintiffs. It never made any claim against subcontractor Kolterman and never admitted any liability under which any subrogation rights against Kolterman could accrue. The record shows that the defendant was offered the investigation files and records of both Clinch-Mitchell and the railway but refused to avail itself of such offer. Under such circumstances, in any event, it is in no position to claim that it was prejudiced by reason of the delay of the plaintiffs in giving it notice of the accident in question.

7. The defendant claims that it was deprived of its rights of subrogation against Kolterman because he finished his work and was paid and no claim was ever made against him. Kolterman had furnished bond; and, while it may be true from the record that his bondsman had been adjudged insolvent on November 31, 1932, still, the defendant never recognized the Henkins loss or any liability

therefor and is not in a position to claim any prejudice by reason of loss of subrogation rights against Kolterman.

So, upon the whole record, we overrule the defendant's assignment of error to the effect that there was a breach of the contract by the plaintiffs such as to preclude them from any recovery.

8. The defendant cites the case of the National Paper Box Co. v. Aetna Life Insurance Company, *supra*, as supporting its contention that the provisions of the policy relied upon by it were conditions precedent and that the failure of the plaintiffs to comply therewith was such as to preclude a recovery by plaintiffs. It is true that it was held in that case that conditions of the character relied on by the defendant were conditions precedent and that the plaintiff therein, having failed to comply with such conditions, was not entitled to recover. In doing so, the court by inference read into the policy a forfeiture clause which was not written therein. In doing so, it did not follow the opinion in the case of Dezell v. Fidelity & Casualty Co., *supra*, by the Supreme Court, which held that, absent a forfeiture clause from the policy on account of failure to give notice, the court was powerless to read a forfeiture clause therein. The National Paper Box Company Case and one or two others which followed it are not in harmony with the controlling decisions of the courts in this State. The Supreme Court of the State of Missouri in Cowell v. Employers' Indemnity Corporation, *supra*, rendered long afterward, failed to follow it and again declared the law to be as stated in the Dezell Case. Numerous decisions of this court rendered since the decision in the National Paper Box Company Case failed to follow it but followed the Dezell Case, as they were requird to do. The National Paper Box Company Case and the case of the U. S. Fidelity & Guaranty Company v. W. P. Carmichael Company, 196 Mo. App. 93, 190 S. W. 648, which reaffirmed it, should be and are overruled.

Upon the whole record in the instant case, the judgment and finding of the trial court were for the right party and should be affirmed. We are not of the opinion that the trial court erred in the matter of refusing any of the instructions asked by the defendant or the declarations of law asked by it.

The judgment of the trial court should be and accordingly is affirmed. All concur.