Silas L. JENNINGS, et al.,
Plaintiffs-Appellants,

v.

HORACE MANN MUTUAL INSURANCE COMPANY,
Defendant-Appellee.

No. 76–1220.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 25, 1977.

Decided Feb. 22, 1977.

Philip M. Jones, Denver, Colo., on the brief, for plaintiff-appellant Silas L. Jennings.

Harvey Sender (LeRoy H. Petrie, of Sobol & Sobol, Denver, Colo., on the brief), for appellant Employers Fire Ins. Co.

Barry D. Roseman, Denver, Colo. (Edward H. Sherman, P. C., Denver, Colo., on the brief), for plaintiff-appellant Betty J. Murphy.

John M. Deisch, of Deisch & Marion, P. C., Denver, Colo., for defendant-appellee.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a declaratory judgment action. Jurisdiction arises as a result of diversity of citizenship. The plaintiffs are Silas L. Jennings, Employers Fire Insurance Company and Betty J. Murphy. The defendant is Horace Mann Mutual Insurance Company, which was at all pertinent times Jennings' insurer.

Jennings was the driver of an automobile which collided with a motorcycle on which Betty Murphy was a passenger. Employers' Company is Murphy's insurer. It paid out to her under its uninsured motorist clause. It seeks, of course, to recover these amounts. Its interest, like that of Jennings and Murphy, is to establish that the Horace Mann Mutual Insurance Company policy of Jennings is in effect.

The controversy in general deals with whether Jennings gave proper notice of the accident to the Horace Mann Company and, secondly, whether Horace Mann was shown to have suffered prejudice as a result of the delay in giving the notice. The trial court found the facts pertaining to excuse for late notice as well as the question of prejudice against Jennings. Following dismissal of this action, the present appeal was taken.

The mentioned collision took place on July 15, 1972, at the intersection of 26th Avenue and Williams Street in Denver. Jennings was driving south on Williams Street and the motorcycle on which Murphy was riding was proceeding east on 26th Avenue, a through or stop street. Jennings was driving a 1969 Pontiac which he had acquired on June 28, 1972. He had owned a 1966 Chevrolet, but he had sold it the very day of the accident. Hence, he was driving the 1969 Pontiac. He had sought and obtained coverage for the Chevrolet on June 19, 1972. On July 17, 1972, he in-

formed the agent for the Horace Mann Company, who had filled out the original application on the Chevrolet, that he desired to change the coverage to the 1969 Pontiac. He testified that he had mentioned to the agent during this telephone conversation that he had had an accident. No details were given.

There can be little question about the fact that Horace Mann was not efficient at handling the transfer, but in any event Jennings did not believe at the time of the accident that the Pontiac was covered nor did he realize that he, as a person, was temporarily at least covered as a result of having insurance coverage on the Chevrolet.

After this July 17 notification, Jennings received three different documents from Horace Mann, all of which gave indication that the Chevrolet continued to be the covered vehicle. Indeed, communications as late as November or December 1972 told him that the Chevrolet was the vehicle covered. It was only after a specific request made in December by Jennings' wife that Horace Mann got around to covering the Pontiac.

Further evidence showed that Jennings harbored the belief as late as March 1973, that the Pontiac was not covered and that it was only about three months later, some time after he had obtained an attorney, that the first provable formal notice of the accident was given to Horace Mann. The latter at that time did not conduct an investigation but rather adopted the position that it was not required to conduct the defense or to investigate.

In January 1975, some two and one-half years after the accident, Murphy's attorney hired an investigator to gather the facts. He had access, of course, to the police investigation report made at the time of the accident. He was able to locate the four witnesses who were listed on the police report and, in addition, was able to find five additional witnesses. He testified at the hearing before the court that the memories of these witnesses were very good; that

they were able to recall the specific details as to what had occurred.

Trial was to the court. It found that:

1. Testimony of Jennings failed to establish that Horace Mann was notified of the accident prior to July 3, 1973.

2. Jennings' belief that his policy did not cover the Pontiac, which belief was held on the day of the accident and thereafter did not constitute a legal excuse for the late notice even if the belief was occasioned by communications of Horace Mann.

3. The appellants failed to overcome the presumption of prejudice to the insurer occasioned by the delay. In support of this finding, the court cited the fact that the investigation by the investigator, Mr. Johnson, failed to produce physical evidence as to vehicle damage. The court appeared to believe that if notice had been given by Jennings within a reasonable time, evidence such as this would have been forthcoming.

### I.

■ First, we consider the contention of Jennings that he was excused from the consequences of the late notice to the Horace Mann Insurance Company because of his confusion as to the insurance coverage extending to the Pontiac. The Horace Mann policy required the insured to notify the insurer of an accident "as soon as practicable." The giving of the required notice under a clause of this nature is under the law an essential condition. *Barclay v. London Guarantee & Ins. Co.,* 46 Colo. 558, 105 P. 865 (1909). The period of time required is a reasonable period. This is governed by the individual facts and circumstances of each case. *Certified Indemnity Co. v. Thun,* 165 Colo. 354, 439 P.2d 28, 30 (1968). "Failure to notify the insurer within a reasonable time constitutes a breach of the insurance contract which requires a justifiable excuse or extenuating circumstances explaining the delay." *Thun, supra.*

The main problem at bar is that Jennings failed to notify Horace Mann for very nearly a year. Both parties agree that this lengthy period of delay was unreasonable and called for an explanation. *See* cases

cited in *City of New York v. Consolidated Mutual Ins. Co.*, 373 N.Y.Supp.2d 456, 459, 83 Misc.2d 810 (N.Y.Sup.Ct.1975). In reaching a conclusion as to whether the period was unreasonable, the subjective circumstances of the insured are generally considered. From a reading of the cases, there appears to be no escape from the fact that the period was unreasonably long.

The question whether the excuse given was reasonable is even more difficult. From the record before the court it would appear that the insured was not educated in the area of insurance coverage. Considering that the entire automobile insurance relationship is shrouded with mystery, it is not surprising that confusion existed. These considerations do not, however, justify overturning the finding of the trial court who heard the evidence that the excuse was not a justifiable one. We have given full consideration to appellants' arguments that the trial court followed an objective rather than a subjective standard and conclude that this is not demonstrated. He appeared to judge the question by applying the circumstances and conditions of Jennings.

## II.

We finally consider whether the court was correct in holding that the presumption of prejudice was not overcome by the evidence offered on behalf of the plaintiffs. As we have noted, the court proceeded on the basis that failure to notify gives rise to a presumption of prejudice to the insurance company and that plaintiff has the burden of dispelling such a presumption. The court found that the plaintiffs had failed to establish a lack of prejudice.

The trial court's findings given from the bench and reported in the transcript state that the carrier is presumed to be prejudiced by delay in notifying it of an accident. The burden, the court went on, is that of the plaintiff to show that there was no prejudice. In analyzing the evidence the court pointed out that plaintiff offered the police report, Exhibit 11, together with the testimony of private investigator Johnson as to his investigation in January 1975

showing that even at that late date the four witnesses named in the police report were located plus five other witnesses. The deficiency which the court thought to be important was the impossibility because of the lapse of time to examine the vehicles and ascertain their condition. Also, the report of Johnson failed to detail the testimony to which the witnesses would give.

As to the physical evidence, the court might have used the photographs which were furnished by Jennings in connection with the motion for new trial in considering whether there was prejudice from inability to determine the vehicle damage.

We now turn to the issue whether the court correctly analyzed the problem of existence of the presumption of prejudice and sufficiency of the evidence to overcome it. Our research indicates that there are three different approaches to this question which is concerned with the degree of prejudice which results from the failure of the insured to notify the insurer of an accident. The oldest of these viewpoints takes the position that prejudice to the insurer is not an important element; that it is immaterial. In jurisdictions which hold to this view, the failure to give timely notice results in violation of a valid covenant of the policy which in turn results in loss of coverage. *See, e.g., Employers' Liability Assur. Corp. v. Perkins,* 169 Md. 269, 181 A. 436 (1935).

A second view is that an unreasonably late notice raises a presumption of prejudice to the insurer. *See, e. g., Tiedtke v. Fidelity & Casualty Co. of New York,* 222 So.2d 206 (Fla.S.Ct.1969); *Henschel v. Hawkeye-Security Ins. Co.,* 178 N.W.2d 409 (Iowa 1970); *Mountainair Municipal Schools v. U. S. Fidelity & Guaranty Co.,* 80 N.M. 761, 461 P.2d 410 (N.M.1969). The presence of the presumption places the burden of showing lack of prejudice on the insured party. *See* 8 Appleman, Insurance Law & Practice Section 4732, p. 17.

A third view of late notice is that no presumption of prejudice results. It is up to the insurer to demonstrate substantial prejudice growing out of the late notice before it is relieved of liability under the

policy. *See, e. g., St. Paul & K. C. S. L. R. Co. v. U. S. Fidelity & Guaranty Co.,* 231 Mo.App. 613, 105 S.W.2d 14 (1937).

■ From all of the evidences that we have been able to find, it appears that Colorado follows the second or middle view. The leading authority on this is *Hubner and Williams Construction Co. v. London Guarantee & Acc. Co.,* 280 F.Supp. 288 (D.Colo. 1967). An opinion by Chief Judge Arraj cites early Colorado cases together with the Appleman treatise and concludes that there is a presumption of prejudice in such circumstances. The opinion adds that the effect of the presumption of prejudice is to place on the insured the burden of showing that no actual prejudice did occur.

■ Inasmuch as this is a presumption which results in fixing the burden of proof, it contemplates that evidence overcomes the presumption. Thus, the presumption is not conclusive or absolute nor is it evidentiary in nature. If that were the case there would be no need to talk about presumptions at all. Instead there could be a statutory provision stating that unreasonable delay in and of itself establishes prejudice. Such a presumption not being conclusive results in merely giving a burden of proof preference to the party in favor of whom the presumption operates. The opposite party has to go forward. There is no reason to suppose that the presumption is to be regarded as actual evidence to be placed on the scale against evidence offered by the insured for the purpose of determining which contention concerning actual prejudice is most cogent, for there is no way to ascertain the weight to be attributed to the presumption. *Cf. Abrams v. American Fidelity Co.,* 32 Cal.2d 233, 195 P.2d 797 (1948).

■ Wigmore discusses the manner of evaluating the presumption. It is his position that where there is a presumption of fact or even a presumption of law, it dissolves in the face of genuine evidence offered by the interested party. *See* Wigmore on Evidence (3rd ed.), Vol. IX, Section 2491, p. 288–89. This same view is taken by this court in *Keene v. U. S.,* 266 F.2d 378 (10th Cir. 1959). In that case the court, through Judge Murrah, said that the presumption of the regularity and validity of administrative proceedings stands "until dissipated by some probative evidence to the contrary." *Id.* at 380. Thus, the difference which we unfortunately have with the trial court's decision is that its rigidity is contrary to reason and logic. The better approach is that of Wigmore which calls for the plaintiff to go forward with some evidence in an effort to dispel the presumption, but it also says that when some evidence has been presented, the presumption loses any probative force which it may have had and it is then up to the adversary party to go forward with the evidence that actual prejudice existed.

■ In reaching this conclusion we are mindful that the accident which has given rise to the controversy was not a complex one. Instead it was an intersection collision in which liability turned on which party had the right-of-way. In this kind of a case prejudice from delay in giving notice is less likely to be suffered than in a complicated factual situation. We do not hold that the plaintiffs should prevail. We simply say that the case is such that the trial court can easily determine the presence or absence of prejudice from a careful scrutiny of all of the evidence. Since in the hearing in the trial court the Horace Mann Company relied on the presumption offering only the testimony of an employee-witness that it is better to investigate immediately after the accident than later (when the trial has become cold, which evidence is obvious), it must be given an opportunity to offer countervailing evidence in response to that already tendered by plaintiffs-appellants. Should such responsive evidence be offered, the appellants would in turn be entitled to offer evidence on their own behalf in rebuttal. If, on the other hand, appellee fails to offer probative evidence, the judgment will belong to the plaintiffs-appellants. Should appellee offer evidence which is probative, the trial court should make its determination from all of the evidence in the case. It must ultimately place on the plaintiffs-ap-

pellants the requirement of persuasion that there was not prejudice or, stated differently, proof by preponderance of the evidence of non-prejudice.

Accordingly, then, the judgment of the district court is reversed with directions to vacate the judgment in favor of the appellee. The cause is remanded for further proceedings consistent with the views which we have expressed.