The AETNA CASUALTY & SURETY
COMPANY, a Connecticut
Corporation, Plaintiff,

v.

Charles SAMSON, Jr., Southern Colorado
Wholesale Roofing, Co., a corporation,
Southern Colorado Wholesale Roofing,
Inc., a corporation, Defendants.

Civ. A. No. 77–K–914.

United States District Court,
D. Colorado.

June 12, 1979.

Donald E. LaMora, Colorado Springs, Colo., for plaintiff.

Dale P. Tursi, Faricy & Tursi, Pueblo, Colo., for defendants.

MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a declaratory judgment action. Jurisdiction is founded on diversity of citi-

zenship and the matter in controversy exceeds $10,000. 28 U.S.C. § 1332. Plaintiff is the Aetna Casualty & Surety Company. Defendant Charles Samson, Jr. was a partner in defendant Southern Colorado Wholesale Roofing, Co. prior to its incorporation in January, 1975, and is presently the president of defendant Southern Colorado Wholesale Roofing, Inc.

The matter is before the court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff seeks an order interpreting the notice provision of comprehensive liability insurance policy issued for the policy period from April 7, 1975 to April 7, 1976 to Charles Samson, Jr. and Southern Colorado Wholesale Roofing, Inc. for bodily injury liability [Policy No. 19 AL 19671 8]; whether there was compliance with that provision; and whether plaintiff must afford defendants a defense or any other policy benefits with respect to a wrongful death action presently pending in the District Court in and for the County of Pueblo and State of Colorado, Civil Action No. C–1140.

The parties have filed an agreed statement of facts for the courts consideration in ruling on the cross motions for summary judgment and have agreed that there are no other material facts in dispute. After review of the pleadings, briefs, exhibits, and depositions filed in this case, the court is ready to rule. The following is a summary of the facts.

On August 4, 1975, William Ogden, an employee of the Athey Beaman Company, Inc., was killed in an industrial accident which was allegedly caused by a defective condition or malfunction in a Model 190 Smith Hoist owned by the company. On May 9, 1977, Julia Ogden and Angela Kristina Ogden, as plaintiffs, instituted Civil Action No. C–1140 in the District Court in and for the County of Pueblo, State of Colorado, seeking general damages in the sum of $1,000,000 and special damages in the amount of $1,200 against Southern Colorado Wholesale Roofing, Inc. for the wrongful death of William Ogden. The state court claim allegedly arises out of a defective condition in the Model 190 Smith Hoist sold to Athey Beaman Company, Inc. on October 11, 1973 by Southern Colorado Wholesale Roofing Company.

On May 19, 1977 the defendants herein tendered to Aetna the defense of Civil Action No. C–1140. Upon receipt of the tendered defense Aetna issued to defendants a full reservation of rights letter, which reservation was based upon delayed notice.

On September 30, 1977, after completing an investigation into the coverage question, Aetna denied defendants coverage for Civil Action No. C–1140 on the grounds that it had received delayed notice of the occurrence and that said delayed notice was prejudicial to plaintiff, i. e., that plaintiff-insurer was unable to complete a full and timely investigation of the facts and circumstances of the accident.

## BACKGROUND

Plaintiff issued a comprehensive liability insurance policy, No. 19 AL 19671 8, on April 7, 1975, insuring Charles Samson, Jr. and Southern Colorado Wholesale Roofing, Inc. for bodily injury liability with coverage of $100,000 which policy was for a term commencing April 7, 1975 and terminating April 7, 1976. This policy was in full force and effect on August 4, 1975 and Charles Samson, Jr. and Southern Colorado Wholesale Roofing, Inc. were entitled to coverage thereunder subject to the terms and conditions of this policy.

Plaintiff asserts that defendants failed to comply with the following terms and provision of the policy:

4. *Insured's Duties in the Event of Occurrence, Claim or Suit.*

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

An analysis of business relationships and correspondence between the parties following the August 4, 1975 incident is required in order to determine whether there was compliance with this notice provision and, if not, whether the plaintiff was prejudiced by such noncompliance.

Ralph Williams is a Chartered Property Casualty Underwriter who has been in the insurance business for 13 years. He is employed by the Steel City Agencies which is a general independent insurance agency. He is president of the corporation and manager of the commercial insurance department. He is a licensed agent for the Aetna Insurance Company.

The Steel City Agencies were at all times herein pertinent a licensed agent for the plaintiff-insurer and wrote various policies of insurance with plaintiff for both Southern Colorado Wholesale Roofing, Inc. and Athey Beaman Company, Inc. Charles Samson, Jr. was a general partner in Southern Colorado Wholesale Roofing Company, a co-partnership, on October 11, 1973. On August 4, 1975, Charles Samson, Jr. was the president, chief operating officer and majority stockholder of both Southern Colorado Wholesale Roofing, Inc. and Athey Beaman Company, Inc.

At said times both Southern Colorado Wholesale Roofing, Inc. and Athey Beaman Company, Inc. were operated from the same premises; neither Southern Colorado Wholesale Company, a co-partnership, nor Southern Colorado Wholesale Roofing, Inc., a corporation, had any employees; Southern Colorado Wholesale Roofing, Inc. did not have any payroll, did not carry any workmen's compensation insurance, and did not own any of the equipment which was used on the Mountain Bell job where the fatal accident occurred. The employees of Athey Beaman Company, Inc. were loaned to Southern Colorado Wholesale Roofing Company and are presently loaned to Southern Colorado Wholesale Roofing, Inc. to perform whatever services may be required by these entities which reimburse Athey Beaman Company, Inc. for the wages of the employees. Athey Beaman Company, Inc. employees handle the merchandise, do stock work, and perform the warehouse work for Southern Colorado Wholesale Roofing, Inc. The time is billed as a service from Athey Beaman Company, Inc. to Southern Colorado Wholesale Roofing, Inc.

Southern Colorado Wholesale Roofing, Inc. had a fire policy covering the stock in both the names of Southern Colorado Wholesale Roofing, Inc. and Athey Beaman Company, Inc. In his deposition, Mr. Williams testified that the reason for the joint policy was that

> the stock was in movement all the time between the two corporations, and it was virtually impossible to establish what type of amounts were one place versus another place, so I wrote a policy with one limit as their interest may appear, and I decided that if a loss ever occurred on it, that at that point in time we would decide in whose name what portion of the stock was.

*Williams Deposition,* p. 7, lines 7–15.

Mr. Williams further testified that the companies were not combined on a liability policy, although there was "interlocking ownership," because insurance regulations require that there be fifty-one per cent (51%) ownership by the same individual of both entities before they can be combined on a liability policy. Although Charles Samson, Jr. owns ninety per cent (90%) of the outstanding stock in the Athey Beaman Company, Inc., he owns only fifty per cent (50%) of the outstanding stock in the Southern Colorado Wholesale Roofing, Inc. Hence, the two companies were not combined on a liability policy.

Mr. Williams testified in his deposition that he was at all times familiar with the makeup, nature and relationship of Southern Colorado Wholesale Roofing, Inc. and Athey Beaman Company, Inc. He stated that he was familiar with it since the inception of both corporations, including the year 1975.

In his deposition, Mr. Williams also recalled a mixup which occurred in September, 1973, when a claim was sent in under

the name of Southern Colorado Wholesale Roofing, Inc. which should have been sent in under Athey Beaman Company, Inc. He noted that many questions were asked by Aetna at that time and the loss was subsequently adjusted and the claim paid.

According to Mr. Williams, Lee P. Theisen, Denver Bond Department of Aetna, was also familiar with the relationship of these two entities. In a letter to Williams, dated June 13, 1975, he stated:

It has come to our attention that Southern Colorado Wholesale Roofing, Inc., has incorporated recently.

If this is the case, we would like to have the corporate indemnity of this new corporation. In so far as this entity was a partnership in the past, indemnity was covered under the original agreement with the above captioned account. The new indemnity agreement for Southern Colorado Wholesale Roofing is needed due to the change in status. *There should be no problem in obtaining the new corporate indemnity as we already possess the indemnity of Athey Beaman Company, Inc.* This is just another one of the pieces of paperwork involved with incorporation. (Emphasis added.)

A resolution was executed on June 13, 1975 by Southern Colorado Wholesale Roofing, Inc. which allows its board of directors to approve the signing of a general indemnification agreement with Aetna for Athey Beaman Company, Inc. On that same date, a resolution was executed by the board of directors of Athey Beaman Company, Inc. which allows the board of directors of Athey Beaman Company, Inc. to approve the signing of a general indemnification agreement with Aetna for Southern Colorado Wholesale Roofing, Inc.

Mr. Williams testified that although the Steel City Agencies did not consider these two corporations to be the same entity, they did treat them as closely related. The policies for both corporations were kept in the same file; were billed to the same individual; and were carried on the same account number for purposes of the Steel City Agencies bookkeeping.

On October 11, 1973, the Southern Colorado Wholesale Roofing Company, a co-partnership, sold a Model 190 Smith Hoist to Athey Beaman Company, Inc. The sale of the hoist was a casual sale in that Southern Colorado Wholesale Roofing Company was neither a manufacturer, wholesaler nor dealer in hoists.

On August 4, 1975, William Ogden, an employee of the Athey Beaman Company, Inc., was operating the hoist on the fifth floor of the Mountain Bell Building, which at that time was under construction, when a fatal accident occurred. Mr. Williams was informed of the accident on the same day by Mrs. Charles Samson. At that time she informed him of Mr. Ogden's death at the Mountain Bell site.

In his deposition, Mr. Williams testified that he turned the call over to the claims department so they could take the information, and instructed the claims department to call the loss into Aetna. Williams testified that he immediately thereafter drove down to the job site to assist in any way he could.

Deposition Exhibit E of Mr. Williams' deposition contains handwritten notes on the loss report that was phoned into Aetna by the Steel City Agencies' claims department. Specifically, the document indicates that Aetna was informed of the following: "Employee: Wm. Ogden—Parkview Hosp. 319 Broadway—died at 12:30 or so."

John Putman, a claims adjuster out of Aetna's Colorado Springs office, was notified concerning this claim. According to Williams, Putman went down to the scene of the accident the following day. Mr. Williams testified that the following claims were brought to Mr. Putman's attention:

There was one, the loss on the piece of equipment, the hoist that fell from the roof of the Mountain Bell Building. I think we looked at whether or not there was coverage on the vehicle that the hoist struck, and found that it was not covered for comprehensive on that vehicle, and so there was no loss paid on it, because we discussed whether it was a falling object

or a collision loss, but it was moot anyway, because we had fire and theft on that vehicle. And then we also paid a claim under property damage for damage done to, I believe, a pole and wiring, electrical wiring.

On August 4, 1975, The Aetna Casualty & Surety Company had in full force and effect an insurance policy No. 19 AL 80025 1, insuring Athey Beaman Company, Inc. against various perils including liability for damages to property owned by the insured and others. Under this policy, the Athey Beaman Company, Inc. was paid the sum of $1,159 representing the value of the M 190 Smith Hoist which was damaged in the accident. *Aetna's adjuster verified the initial cost of the hoist by reference to an invoice dated October 11, 1973 from Southern Colorado Wholesale Roofing Company to Athey Beaman Company, Inc.* The sum of $429.28 was also paid in settlement of claims made by Mountain Bell resulting from the accident.

On August 5, 1975, the Colorado Occupational Safety and Health Administration began its investigation into the cause of the previous day's accident. Defendant Charles Samson, Jr. participated in the investigation. On October 29, 1975, the Administration issued a report setting forth its findings and conclusions. The defendants herein dispute the conclusions set forth in that report.

In their agreed statement of facts, the parties here stipulate that defendants received a copy of the OSHA report on October 30, 1975 and that no copy of the OSHA report was furnished to plaintiff following receipt of the same by defendants until May 4, 1978. On that date the report was furnished during the taking of the deposition of Charles Samson, Jr. in this action.

The following stipulations have also been submitted:

19. That in connection with the Colorado Occupational Safety and Health Administration investigation of the accident of August 4, 1975, the Model 190 Smith Hoist which was involved in the accident was reassembled by Athey Beaman, Co., Inc. and was inspected as part of said investigation; that the Plaintiff was not notified of the reassembly of said Model 190 Smith Hoist nor was Plaintiff present at the time said hoist was reassembled and inspected.

20. That subsequent to the Colorado Occupational Safety and Health Administration inspection, the Model 190 Smith Hoist which was involved in the accident of August 4, 1975, was disassembled by Athey Beaman Co., Inc. and has not since May 19, 1977 been available for inspection by Plaintiff.

21. That between thirty to forty-five days prior to May 10, 1975, the Defendant Charles Samson, Jr., had a meeting with Mr. Lee N. Sternal, attorney for the Plaintiff in Civil Action No. C–1140, during which meeting Mr. Sternal advised the Defendant Charles Samson, Jr. that he contemplated bringing a products liability action claim against the manufacturer of the Model 190 Smith Hoist because of allegedly defective design of said hoist and the failure to attach operating instructions to said hoist; that Defendant did not notify Plaintiff of said meeting or the expressed intent of Mr. Sternal to institute a products liability action involving said hoist; that at said meeting Mr. Samson provided Mr. Sternal with a copy of the October 11, 1973 invoice evidencing the sale referred to in Paragraph 5 hereof.

22. That the Plaintiff prior to May 19, 1977, did not conduct any investigation into the accident of August 4, 1975, above and beyond that necessary to determine the facts upon which the payments for property damage were made under the Athey Beaman, Co., Inc. insurance policy

.   .   .   .   .

Mr. Williams, of the Steel City Agencies, testified that he first learned of the pending state court lawsuit against Southern Colorado Wholesale Roofing, Inc. during the week of May 10, 1977.

The Aetna policy in this case required the insured to notify the insurer of an accident

"as soon as practicable." This notice was to be written notice "containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place, . . .", etc. The Colorado Supreme Court, in *Barclay v. London Guarantee & Ins. Co.*, 46 Colo. 558, 105 P. 865 (1909), held that the giving of the required notice under a clause of this nature is an essential condition to coverage. Specifically, the court stated:

The plain and unequivocal requirements of the contract are that 'upon the occurrence of an accident, and also upon receipt of notice of any claim on account of an accident, the assured shall give immediate notice in writing of such accident or claim with the fullest information available,' to the defendant. These conditions are as much a part of the contract as any other portion thereof. The plaintiffs voluntarily entered into the contract, with these conditions therein, and thereby made themselves subject to such conditions. Their stipulation in regard to immediate notice was a condition with which they must comply in order to bring the defendant under its obligations. Their right to indemnity flowed from this instrument. It was an executory contract, and failure to comply with the conditions as to notice was a failure to complete the contract. . . .

We are of the opinion that by the language of the contract an immediate notice of the accident and also notice of claim for damages as stipulated for are conditions precedent to the liability of the defendant, and without such notice or notices, or a legal excuse for the failure to give the same, the defendant cannot be held.

105 P. at 866–867. *See Wetzbarger v. Eisen,* Colo.App., 475 P.2d 637 (1970).

In *Certified Indemnity Co. v. Thun,* 165 Colo. 354, 439 P.2d 28 (1968), the Colorado Supreme Court held that this clause does not require instantaneous notice of an accident, "but rather call[s] for notice within a reasonable length of time under all the facts and circumstances of each particular case." *Id.* at 30.

The court continued:

Failure to notify the insurer within a reasonable time constitutes a breach of that contract requiring a justifiable excuse or extenuating circumstances explaining the delay. Unless the delay is so explained, the insurer cannot be held liable under the insurance contract to defend the insured and pay any judgments recovered against him. *Id.*

The court noted that when facts are undisputed and only one inference can be drawn therefrom, then the question as to what constitutes a reasonable time for the giving of notice is a question of law for the court. *Id.*

It is undisputed that defendants informed the Steel City Agencies of the accident by telephone on the date of the accident; that the Steel City Agencies is a licensed agent of Aetna; that the Steel City Agencies telephoned the claim into Aetna; that Mr. Williams, of the Steel City Agencies, drove down to the scene of the accident that same day; and that an Aetna claims adjuster visited the scene the following day.

After reviewing the agreed statement of facts and depositions filed herein, it is unclear just what form of notice was ultimately given to Aetna by the Athey Beaman Company, Inc. under insurance policy No. 19 AL 80025 1, which prompted Aetna to pay the Athey Beaman Company, Inc. for property damage caused by the accident. However, for purposes of the motions presently considered, Aetna had adequate notice of the accident to satisfy the contractual notice provisions in the policy covering the Athey Beaman Company, Inc. property claims. This conclusion is reached regardless of whether notice was by written notification or by waiver of the written notice provision, i. e., due to past practice, custom, or course of dealing between the defendants and the Steel City Agencies in accepting oral notice in the past. *See Lemmon, Freeth, Haines & Jones, Architects,*

*Ltd., v. Underwriters at Lloyds, London,* Hawaii, 484 P.2d 141 (1971).[1]

■ Given the almost inextricable relationship between Southern Colorado Wholesale Roofing, Inc. and the Athey Beaman Company, Inc.; the knowledge possessed by both the Steel City Agencies and Aetna concerning that relationship; and the fact that the notice given Aetna concerning the accident was sufficient to warrant action on the Athey Beaman Company, Inc. property claims, the conclusion that sufficient notice was given to Aetna within the terms of the comprehensive liability insurance policy in the case at bar is inescapable.

Defendant Samson had been dealing with Mr. Williams ever since the inception of both defendant corporations; defendant Samson relied on Mr. Williams to take care of his insurance coverage; defendant Samson contacted Mr. Williams at the time of the "occurrence," i. e., the accident; and it can be inferred that defendant Samson relied on Mr. Williams to handle "the matter." Mr. Williams did handle "the matter" as evidenced by payment of the Athey Beaman Company, Inc. claims. It is apparent that defendant Samson, whether acting on behalf of Athey Beaman Company, Inc. or Southern Colorado Wholesale Roofing, Inc., provided Aetna with whatever information he possessed at the time regarding claims of which he had knowledge, i. e., the property damage claims.

Aetna received notice of the "occurrence" on August 4, 1975 when the agent, Mr. Williams, was contacted. The time, place, circumstances, and names of the injured were related to the best of defendants' knowledge at the time. Although the COSH report, issued on October 29, 1975, may suggest potential liability on the part of the employer for the death of Mr. Ogden, defendants dispute the conclusions set forth in the report.[2]

Plaintiff contends that if in fact defendants reasonably believed that they would incur no liability as the result of Mr. Ogden's death, the COSH report should have persuaded defendants that a good possibility existed they would be sued for allegedly selling a defective hoist; and that Aetna should have been given notice of the "occurrence" at that time so that an investigation could have been undertaken.

1. In *Overturf v. National Union Fire Insurance Co.,* Colo.App., 470 P.2d 600 (1970), the Colorado Court of Appeals held that "where the policy requires written notice, verbal notification will not suffice." *Id.* at 602. In that case plaintiff argued that the defendant insurance company had actual notice of the accident through its agent, Underwriters Insurance, Inc., shortly after the accident. Furthermore, plaintiff urged that since he was not requested to submit a written notification of the accident by Underwriters Insurance, Inc., nor was he sent an accident form to fill out, that he held the reasonable belief that further notice was not required.

In response to plaintiff's arguments, the court held:

[P]laintiff does not contend that the absence of a request from the agent for Baker to file a written report amounted to a waiver on the part of the defendant of the requirement of a written notice, *and there is no evidence in the record that Baker was ever actively led to conclude that further notice was not required.* It is our opinion that even if we were to rule here that the oral notice to the agent imputed notice to the defendant, this would not, by itself in this case, relieve Baker from submitting the written information and notice required by the policy. To so rule would be tantamount to holding that the policy's requirement of a "written notice" was of no force and effect. *Id.* at 602–03. (Emphasis added.)

The case at bar is distinguished from *Overturf* in that notice to Mr. Williams and the subsequent action taken by Aetna on the claim may be deemed a waiver of any written notice, if in fact there was none. [It is not clear from the submitted documents whether there was in fact any written notice given.] The parties, however, do not appear to dispute the notice given by Athey Beaman Company, Inc. to Aetna which is evidenced by the prompt action by Aetna on the property claims submitted by Athey Beaman Company, Inc.

2. The Colorado Court of Appeals, in *Barnes v. Waco Scaffolding and Equipment Company,* Colo.App. 589 P.2d 505 (1978), recently held that

a reasonable construction of the policy excuses delayed notice where the insured has acted as a reasonably prudent person in deciding he is not liable for the accident. *Id.* at 507.

In any other situation, this might be a viable argument. Given, however, that employees of Athey Beaman Company, Inc. essentially worked for both companies; that machinery and stock was in movement all the time between the companies; and that if had it not been for an insurance regulation, both companies would most likely have had coverage on the same comprehensive liability insurance policy. The most important factor is that both the insurance agent, Mr. Williams, and Aetna were aware of the relationship between these two corporations. Aetna was given notice of the "occurrence" within the meaning of the contractual notice provision and Aetna knew the facts regarding the insured, the time, the place, the circumstances as best the defendants herein knew them, and the names of the injured and the available witnesses. (In his affidavit, defendant Charles Samson, Jr. attests that "on the day of the occurance [sic], statements of all employees who were witnesses were reduced to writing and are preserved for use by Aetna.") Aetna learned of the pending state court lawsuit within a short period of time after the defendants herein learned of the suit.

The state court lawsuit was filed on May 9, 1977 and Aetna was tendered the defense of this civil action on May 19, 1977. I conclude that Aetna was given notice of the occurrence "as soon as practicable" under the circumstances of this particular case.

Even if the conclusion was to the contrary, I am not convinced that Aetna was prejudiced by the delay. In *Jennings v. Horace Mann Mutual Insurance Company,* 549 F.2d 1364 (10th Cir. 1977), the Tenth Circuit reiterated Colorado law on the notice provision in insurance policies. Therein, the court determined:

> The Horace Mann policy required the insured to notify the insurer of an accident "as soon as practicable." The giving of the required notice under a clause of this nature is under the law an essential condition . . . The period of time required is a reasonable period. This is governed by the individual facts and circumstances of each case. . . .

"Failure to notify the insurer within a reasonable time constitutes a breach of the insurance contract which requires a justifiable excuse or extenuating circumstances explaining the delay." *Id.* at 1366. (Citations omitted.)

The United States District Court for the District of Colorado, in *Hubner and Williams Construction Co. v. London Guarantee and Accident Company,* 280 F.Supp. 288 (D.Colo.1967), noted that the majority rule erects "a presumption that the assured's failure to give timely notice prejudices the insurer." *Id.* at 290. The court continued:

> By what appears to be the better view, however, 'this does not mean that upon a showing of delay, alone, the insurer walks out of court free of potential claims. It means, rather that prejudice being a difficult matter affirmatively to prove, it is not required to make such proof.' [*Id.,* quoting] 8 Appleman, Insurance Law & Practice, § 4732 at p. 17 (1962).

In other words, the presence of the presumption places the burden on defendants herein to show lack of actual prejudice to the insurer. The Tenth Circuit, in *Jennings, supra,* expressed the rule as follows:

> The better approach is that of Wigmore which calls for the plaintiff to go forward with some evidence in an effort to dispel the presumption, but it also says that when some evidence has been presented, the presumption loses any probative force which it may have had and it is then up to the adversary party to go forward with the evidence that actual prejudice existed. 549 F.2d at 1368.

In addition to the affidavit of defendant Charles Samson, Jr., defendants filed a brief in support of their position that the presumption of prejudice herein should be dispelled. Defendants submit, in part, the following:

(a) The Ogden claim does not allege any specific defect in the hoist involved, therefore, any similar model may be used for testing, Plaintiff-insurer having equal if not greater access to the hoists than do the Ogdens.

(b) The COSH investigation is available to the plaintiff-insurer.

(c) No material witness is no longer available.

(d) Plaintiff-insurer did inspect and total out the subject hoist, knew of the interrelationship of Charles Samson, Jr., Athey Beaman and Southern Colorado Wholesale Roofing Co.

.    .    .    .    .

(e) Ralph A. Williams, President of Plaintiff's licenses and authorized agent of 13 years in the insurance business and with a C.P.C.U. designation since 1969  .   . gave his expert opinion that Plaintiff should not have been prejudiced (Williams deposition, page 18).

In addition, Charles Samson, Jr. attests that "on the day of the occurrence, statements of all employees who were witnesses were reduced to writing and are preserved for use by Aetna" and "that to the best of my knowledge, information and belief all witnesses are still available and have been since May 19, 1977."

Defendants have set forth sufficient facts to dispel the presumption of actual prejudice to the plaintiff-insurer. Plaintiff-insurer urges that prejudice is apparent in this case since "plaintiff has no opportunity to complete an investigation because of the fact that the Defendants no longer have the hoist in their possession." Plaintiff submits that in view of the claims made by Athey Beaman Company, Inc., "it was only necessary for Plaintiff to determine the market value of the hoist and the extent of damage to third persons' properties in order to settle said claims and it was not necessary for the Plaintiff to cause any "investigation to be made into the functioning of the hoist in order to settle said claims." Plaintiff claims that it had no knowledge of any alleged defect in the hoist which could have contributed to Mr. Ogden's death, nor the fact that an investigation was being conducted by COSH which investigation involved in part the functioning of the hoist.

■ Plaintiff-insurer was informed of Mr. Ogden's death as evidenced from the Steel City Agencies notes recorded following the agencies contact with Aetna. (Williams Deposition Exh. E) Considering the relationship between Southern Colorado Wholesale Roofing, Inc. and the Athey Beaman Company, Inc. and the comprehensive liability insurance policy issued to Southern Colorado Wholesale Roofing, Inc., if Aetna did not make a complete investigation following the receipt of the above information provided by defendants, and are thus prejudiced thereby, it is through no ones fault but its own. Defendant Samson knew that adjusters went out to the site and that the Athey Beaman Company, Inc. claims were paid. As far as the extent of the investigation by Aetna, defendant Samson had a right to assume that Aetna would do whatever was necessary to protect defendants from liability. Defendant Samson is in the roofing business, not the insurance business. Defendants gave Aetna the information they had at the time of the accident, and they tendered the defense to Aetna immediately after they were served with notice of the state court action. To ask an insured to foresee all potential claims arising out of an "occurrence," and to spell them out in order to satisfy the notice provision of the insurance policy, would be to ask that an insured retain the kind of expertise for which it pays the insurer.

Hence, if the plaintiff-insurer is in fact prejudiced due to delayed notice, which I am not convinced it is, then it can attribute such prejudice to its own indifference to the potential lawsuit which became a reality on May 9, 1977. Aetna had been informed of Mr. Ogden's death by Mrs. Samson through the Steel City Agencies.

Defendants' contractual obligation was to give "notice" of "an occurrence," identifying the "insured," the "time," the "place," the "circumstances," and the "names and addresses of witnesses." This information was related to Mr. Williams within a short time after the accident herein as evidenced by the payment of the Athey Beaman Company, Inc. claims. Mr. Williams, with a C.P.C.U. degree in insurance, is an expert in processing this information; Mr. Williams knew the relationship between the companies; Mr. Williams had drawn up the poli-

cies; Mr. Williams viewed the scene of the accident; and Mr. Williams testified in his deposition concerning what claims were brought to John Putman's attention. Just where the communications broke down in the processing of the claims arising from this "occurrence" is beyond the scope of this inquiry. However, it is quite apparent that the ball was somewhere in Aetna's court after defendant Samson related the information concerning the "occurrence" and Aetna appeared to act thereon by investigating and subsequently paying the Athey Beaman claims. Defendants herein had a right to rely on the expertise of Mr. Williams and the insurance company that defendants had been paying premiums to since their inception. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is denied; and that defendants' motion for summary judgment is granted. Plaintiff shall afford defendants a defense and any other policy benefits with respect to the wrongful death action presently pending in the District Court in and for the County of Pueblo and State of Colorado, Civil Action No. C–1140.