John A. FINSTAD, Plaintiff
and Appellant,

v.

STEIGER TRACTOR, INC. and Stuyvesant Life Insurance Company, Allentown, Pennsylvania, a corporation, Defendants and Appellees.

Civ. No. 9841.

Supreme Court of North Dakota.

Jan. 23, 1981.

---

Herschel Lashkowitz, Fargo, for plaintiff and appellant.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendant and appellee Steiger Tractor.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for defendant and appellee Stuyvesant Life Insurance Company; argued by Jack G. Marcil, Fargo.

ERICKSTAD, Chief Justice.

This is an appeal by the plaintiff, John A. Finstad, from the summary judgment of the District Court of Cass County, dated February 15, 1980, dismissing with prejudice Finstad's action against the defendant, Stuyvesant Life Insurance Company (Stuyvesant). We reverse and remand for a trial on the merits.

Finstad filed a complaint dated September 24, 1976, against Steiger Tractor, Inc., alleging that he sustained injuries on July 12, 1975, during the course of his employment with Steiger. In his complaint, Finstad sought benefits from Steiger under a Salary Continuation Plan provided within a collective bargaining agreement executed between Steiger and the labor union representing Steiger's production and maintenance employees.

Finstad alleges that he did not have knowledge of the existence of a group accident indemnity insurance policy written by

Stuyvesant for Steiger's employees until November, 1978. Finstad further alleges that upon learning of the existence of such policy he promptly, through legal counsel, sent notice of claim to Stuyvesant, and on August 6, 1979, he joined Stuyvesant as a party defendant in his lawsuit against Steiger.

On November 21, 1979, Stuyvesant made a motion for summary judgment, under Rule 56, N.D.R.Civ.P., requesting the trial court to dismiss Finstad's action against Stuyvesant on the ground that Finstad failed to serve Stuyvesant with notice of claim within the period set forth in the group insurance policy.

In a memorandum opinion, dated April 10, 1980, the trial court determined, as a matter of law, that privity of contract did not exist between Finstad and Stuyvesant and that Finstad's notice of claim to Stuyvesant three years and four months after the date of the alleged occurrence was "presumptively prejudicial, unreasonable and detrimental" to Stuyvesant. The trial court further determined that there was no genuine issue of material fact, and, accordingly, the trial court granted Stuyvesant's motion for summary judgment.

■ The trial court's grant of a summary judgment motion will be upheld on appeal only if, after viewing the evidence most favorable to the party against whom summary judgment was granted, it appears that there are no genuine issues of material fact and that the party seeking summary judgment is entitled to it as a matter of law. Rule 56(c), N.D.R.Civ.P.; *Jacob v. Hokanson,* 300 N.W.2d 852 (N.D.1980); *Zuraff v. Empire Fire & Marine Insurance Co.,* 252 N.W.2d 302 (N.D.1977).

■ The group insurance police executed between Stuyvesant and Steiger provides an accident indemnity benefit for employees who are disabled as a result of injury occurring during their employment with Steiger. Consequently, each insured employee is a third-party beneficiary under the group insurance policy, and, as such, is entitled to enforce the policy to receive the benefits provided thereunder.[1] Section 9–02–04, N.D.C.C.

■ With regard to giving written notice of claim, the insurance policy provides:

"Written notice of claim must be given to the Company [Stuyvesant] within twenty (20) days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible."

Finstad asserts that although the alleged accident occurred on July 25, 1975, he was not aware of the existence of the Stuyvesant insurance policy until November, 1978, at which time he promptly served notice of claim to Stuyvesant. Therefore, asserts Finstad, he provided written notice of claim to Stuyvesant as soon as "reasonably possible" in compliance with the insurance policy. Stuyvesant asserts that the collective bargaining agreement executed between Steiger and the employee's union contains a section which should have put Finstad on notice that a group accident indemnity insurance policy existed. That section of the collective bargaining agreement provides as follows:

"SALARY CONTINUATION PLAN

"The Salary Continuation Plan *as presently paid for by the Company* [Steiger]

---

1. With regard to the rights of a third-party beneficiary as they relate to the concept of privity, Corbin states at 4 Corbin on Contracts, Section 779J, p. 59 (1951):

"The right of a third party beneficiary is properly described as a 'contract right' whether he is a creditor or a donee. The right is created by a 'contract' between promisor and promisee, the validity and operation of which are determined by the law of 'contracts.' This is not affected by the fact that the beneficiary is not himself a promisee or one of the constituting parties. It has been held that the beneficiary's right is within the protection of the provision of the Constitution against impairment by a State.

"At a time when 'privity' was a talismanic word, many of the courts that recognized an enforceable right in a third party beneficiary contended themselves with saying that 'privity' was created by the laws. This has no reasonable meaning other than that the courts will hold that a contract made by two persons for the benefit of a third creates an enforceable right in the third. That is to say, the 'contract' creates rights in the third party just as it does in the first and second parties." (Footnotes omitted.)

will remain in effect throughout the life of this Agreement.

"To be eligible for benefits under this plan, the employee must have been off work for ninety (90) days and have been an employee of the Company for ninety (90) days.

"Benefits will be based on one-half (½) the employee's monthly salary rate, up to a maximum of one thousand dollars ($1,000.00) per month. Benefits will be paid for up to five (5) years or until age 65, whichever is shorter." [Emphasis added.]

This provision expressly refers to the Salary Continuation Plan as being "presently paid for by the Company" which language, at the very least, implies that Steiger is itself paying the benefits available under such plan. We conclude that the foregoing provision in the collective bargaining agreement does not, in itself, put any employee on notice of the existence of an insurance policy to provide salary continuation benefits.

There is substantial authority in support of the proposition that a beneficiary's ignorance of the existence of an insurance policy, which is not due to his own negligence or fault, excuses his failure to provide notice of claim to the insurer within the time period set by the policy. *Thompson v. Equitable Life Assurance Society of the United States*, 447 Pa. 271, 290 A.2d 422 (1972); *Solano v. Federal Title and Insurance Corp.*, 229 So.2d 312 (Fla.Dist.Ct.App.1969); *Central Surety & Insurance Corporation v. Anderson*, 446 S.W.2d 897 (Tex.Civ.App.1969); *Spradlin v. Columbia Insurance Company of New York*, 34 Tenn.App. 17, 232 S.W.2d 605 (1950); *Joyce v. New York Life Insurance Co.*, 190 Minn. 66, 250 N.W. 674, rev'd on reh. on other grounds, 190 Minn. 72, 252 N.W. 427 (1933); *See also, annot.*, 28 A.L. R.3d 292 (1969). In the instant case, the group insurance policy provides that notice of claim must be given to Stuyvesant "within twenty (20) days after the occurrence or commencement of any loss covered by this policy, *or as soon thereafter as is reasonably possible.*" (Emphasis added.)

Assuming, for purposes of this appeal, the truth of Finstad's assertion that through no fault of his own he was unaware of the existence of the insurance policy until November, 1978, such fact would be relevant to the determination of whether or not Finstad gave notice of claim to Stuyvesant as soon as "reasonably possible" in compliance with the policy.

■ Finstad, in further support of his assertion that his notice of claim was given as soon as reasonably possible, has alleged that he did not receive a Certificate of Insurance as required by the following provision of the insurance policy:

## "CERTIFICATE OF INSURANCE

"The Company [Stuyvesant] will issue to the Employer [Steiger] for delivery to each Insured Employee an individual certificate describing the benefits to which the Insured Employee is entitled under this policy and to whom payable and limitations and requirements of this policy pertaining to the Insured Employee and where this policy may be inspected."

The question of whether or not Finstad received a Certificate of Insurance is relevant to a determination of whether or not he had knowledge, or reason to know, the existence of the insurance policy. We conclude that the question of whether or not Finstad received a Certificate of Insurance is a genuine issue of material fact for which Finstad is entitled to a hearing on the merits.

Finstad asserts that the question of whether or not he received a Certificate of Insurance is relevant for yet another purpose. He alleges that, for the limited purpose of delivering the Certificates of Insurance to each insured employee, Steiger was acting as the agent of Stuyvesant. Therefore, asserts Finstad, Steiger's failure to deliver a Certificate of Insurance to him is imputed to Stuyvesant, as Steiger's principal, and constitutes a breach of the insurance contract which excuses Finstad's delay

in providing written notice of claim to Stuyvesant.[2]

■ Although a principal-agent relationship generally does not arise between the insurer and the employer when a group insurance policy is issued, *Boseman v. Connecticut General Life Insurance Company*, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 395 (1937); *Sorenson v. Hartford Accident and Life Insurance Company*, 585 P.2d 440 (Utah 1978), such a relationship may arise under the facts of a particular case. *Elfstrom v. New York Life Insurance Company*, 67 Cal.2d 503, 63 Cal.Rptr. 35, 432 P.2d 731 (1967). In *Elfstrom, supra*, the California Supreme Court held that the employer was acting as the agent of the insurer in undertaking certain responsibilities in administering a group insurance policy and that the employers' errors in administering the policy were attributable to the insurer. With regard to the principal-agent issue, the California Supreme Court stated:

"A substantial number of cases have considered the question of whether an employer acts as the agent of the insurer or of the employees in administering a policy of group insurance but their holdings are hopelessly in conflict.

"A number of decisions hold that an employer acts as the agent of its employees in administering the group policy. (*Boseman v. Connecticut General Life Insurance Co.* (1937) 301 U.S. 196, 204–205, 57 S.Ct. 686, [690–91], 81 L.Ed. 1036; *Metropolitan Life Ins. Co. v. Quilty* (7th Cir. 1937) 92 F.2d 829, 832; *Leach v. Metropolitan Life Ins. Co.* (1927) 124 Kan. 584, 261 P. 603, 605–606; *Equitable Life Assur. Soc. of U. S. v. Hall* (1934) 253 Ky. 450, 69 S.W.2d 977, 978; *Duval v. Metropolitan Life Ins. Co.* (1927) 82 N.H. 543, 136 A. 400, 403–405, 50 A.L.R. 1276; *Kloidt v. Metropolitan Life Ins. Co.* (1939) 18 N.J.Misc. 661, 16 A.2d 274, 279; *Hroblak v. Metropolitan Life Ins. Co.* (Ohio App.1947) 79 N.E.2d 360, 364; *McFadden*

*v. Equitable Life Assur. Soc.* (1945) 351 Pa. 570, 41 A.2d 624, 626.) The rationale of these case[s] appears to be that the employer is acting for its own benefit or for its employees in performing these tasks, rather than serving the purposes of the insurer, that the real insured is the employer acting for the employees as a group, that the employer and the employees are allied in their interests, and that these interests are adverse to the insurer. (See Borst, Group Policyholder as Agent of Insurer or Group Member, 14 Federation Ins. Co. Q. Winter 1963–64, p. 11; 1 Appleman, op. cit. supra, at p. 55).

"Other cases have reached a contrary conclusion. (*Clauson v. Prudential Insurance Co. of America* (D.C.Mass.1961) 195 F.Supp. 72, 80; *Piedmont Southern Life Insurance Co. v. Gunter* (1963) 108 Ga. App. 236, 132 S.E.2d 527, 530; *Neider v. Continental Assur. Co.* (1948) 213 La. 621, 35 So.2d 237, 240–241, 2 A.L.R.2d 846; *Baum v. Massachusetts Mutual Life Insurance Co.* (Okl.1960) 357 P.2d 960, 964; *Coker v. Aetna Life Ins. Co.* (1938) 188 S.C. 472, 199 S.E. 694, 696–697.) The reasoning underlying these decisions is that the employer carries out the functions which the insurer necessarily would perform in other types of insurance and thereby confers a substantial benefit on the insurer, and that since the individual employee has no knowledge of or control over the administrative acts performed by the employer, it would be inequitable to charge him with the employer's errors. (Borst, op. cit. supra, at p. 11; 1 Appleman, op. cit. supra, at pp. 55–56.)

\* \* \* \* \* \*

"We are convinced that the employer is the agent of the insurer in performing the duties of administering group insurance policies." 432 P.2d at 736–737.

■ In the instant case, the group insurance policy provides that "the company will issue to the employer for delivery to each

---

**2.** As a corollary to this argument, Finstad also asserts that Stuyvesant never issued the Certificates of Insurance to Steiger for delivery and that such failure by Stuyvesant constitutes a breach of the insurance contract which excuses Finstad's delay in providing written notice of claim to Stuyvesant.

insured employee" a Certificate of Insurance. We believe that the question of whether or not the parties intended, through the use of such language, to create a principal-agent relationship between Stuyvesant and Steiger is a mixed question of law and fact which should be determined upon a hearing on the merits. This issue may be especially relevant in view of Section 26–06–09, N.D.C.C., which provides:

"*26–06–09. Waiver of delay in presenting notice or proof of loss.*—Delay in the presentation to an insurer of notice or proof of loss is waived *if such delay is caused by any act of the insurer,* or if he omits to make objections promptly and specifically upon that ground." [Emphasis added.]

We conclude that the trial court erred in granting a summary judgment of dismissal on the ground that Finstad, as a matter of law, failed to provide a notice of claim as required by the group insurance contract. In this regard, Finstad has raised genuine issues of material fact for which he is entitled to a hearing on the merits.

Finstad has raised an additional issue which is relevant in the instant case only if the trial court determines, upon a hearing on the merits, that Finstad failed to provide written notice of claim as soon as "reasonably possible" as required by the group insurance policy. That issue is whether or not the failure to provide notice of claim within the time required by the insurance policy results in a forfeiture, by Finstad, of all benefits under the policy, and to what extent, if at all, prejudiced to Stuyvesant from the untimely notice of claim is a factor.

The case decisions on this subject present a diversity of views as to the nature of notice-of-claim provisions in insurance policies and as to the consequence of a failure to comply with such provisions. *See, annot., Disability Insurance or Provision: Clause Requiring Notice of Claim Within Specified Time or As Soon As Reasonably Possible, or the Like,* 17 A.L.R.3d 530 (1968). The three most widely held approaches are perhaps best explained by the

Tenth Circuit United States Court of Appeals in *Jennings v. Horace Mann Mutual Insurance Company,* 549 F.2d 1364 (10th Cir. 1977), as follows:

"Our research indicates that there are three different approaches to this question which is concerned with the degree of prejudice which results from the failure of the insured to notify the insurer of an accident. The oldest of these viewpoints takes the position that prejudice to the insurer is not an important element; that it is immaterial. In jurisdictions which hold to this view, the failure to give timely notice results in violation of a valid covenant of the policy which in turn results in loss of coverage. *See, e. g., Employers' Liability Assur. Corp. v. Perkins,* 169 Md. 269, 181 A. 436 (1935).

"A second view is that an unreasonably late notice raises a presumption of prejudice to the insurer. *See, e. g., Tiedtke v. Fidelity & Casualty Co. of New York,* 222 So.2d 206 (Fla.S.Ct.1969); *Henschel v. Hawkeye-Security Ins. Co.,* 178 N.W.2d 409 (Iowa 1970); *Mountainair Municipal Schools v. U. S. Fidelity & Guaranty Co.,* 80 N.M. 761, 461 P.2d 410 (N.M.1969). The presence of the presumption places the burden of showing lack of prejudice on the insured party. *See* 8 Appleman, Insurance Law & Practice Section 4732, p. 17.

"A third view of late notice is that no presumption of prejudice results. It is up to the insurer to demonstrate substantial prejudice growing out of the late notice before it is relieved of liability under the policy. *See, e. g., St. Paul & K. C. S. L. R. Co. v. U. S. Fidelity & Guaranty Co.,* 231 Mo.App. 613, 105 S.W.2d 14 (1937)." 549 F.2d at 1367–1368.

The Supreme Court of New Jersey in *Cooper v. Government Employees Insurance Company,* 51 N.J. 86, 237 A.2d 870 (1968), discussed this issue with regard to insurance coverage under an automobile liability policy. We believe the following rationale expressed by the New Jersey court is well-reasoned and is equally applicable to a group accident insurance policy such as the one involved in the instant case:

"And although the policy may speak of the notice provision in terms of 'condition precedent,' as *Whittle* observed, nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds.

\* \* \* \* \* \*

"The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's." (Footnotes omitted.) 237 A.2d at 873–874.

To determine the consequence of a failure to provide a timely notice of claim to Stuyvesant in the instant case, we must look to the terms of the insurance policy itself and construe those terms in accord with the principles of law regarding the interpretation of insurance contracts. It is well-established in North Dakota that, because an insurance policy is a contract of adhesion, any ambiguity or reasonable doubt as to its meaning is to be strictly construed against the insurer and in favor of insured. *Aid Insurance Services, Inc. v. Geiger*, 294 N.W.2d 411 (N.D.1980). If the language of an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted. *Aid Insurance Services, Inc. v. Geiger, supra; Henson v. State Farm Fire & Casualty Company*, 252 N.W.2d 200 (N.D.1977).

Although the group insurance policy in the instant case provides that written

notice of claim must be given to Stuyvesant, the policy does not expressly provide for a forfeiture or any other consequence upon failure to give such notice within the time period specified in the policy. In accord with the rationale expressed by the New Jersey Supreme Court in *Cooper, supra*, and in accord with the foregoing principles of interpretation, we conclude that failure to provide a timely notice of claim to Stuyvesant as required by the insurance policy will result in a forfeiture of benefits to Finstad only if Stuyvesant can demonstrate that such failure resulted in a likelihood of appreciable prejudice to Stuyvesant so as to constitute a material breach of contract justifying a discharge of Stuyvesant's liability. Thus, in order to avoid liability under the insurance policy, Stuyvesant must prove that Finstad breached the notice provision and must also prove that such breach resulted in a likelihood of appreciable prejudice to Stuyvesant.

We reverse the trial court's summary judgment of dismissal and remand for a trial on the merits in accordance with this opinion.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.